### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARK LIBOY,<br><br>                         Plaintiff,<br><br>-against-<br><br>GREGORY RUSS, as Chair of the New York City Housing Authority, LISA BOVA-HIATT, as interim Chief Executive Officer of the New York City Housing Authority, and the NEW YORK CITY HOUSING AUTHORITY,<br><br>                         Defendants. | \_\_\_\_\_**cv**\_\_\_\_\_<br><br><br>**COMPLAINT & JURY DEMAND** |

Plaintiff Mark Liboy, by and through his counsel, Alston & Bird LLP and Manhattan Legal Services, as and for his Complaint against Defendants Gregory Russ, Lisa Bova-Hiatt, and the New York City Housing Authority ("NYCHA"), alleges as follows:

### PRELIMINARY STATEMENT

1.      Plaintiff Mark Liboy is a tenant living in a project-based Section 8 development in the Bronx, NY.  He is diagnosed with several chronic medical conditions that affect his mobility, including spinal stenosis, herniated disks and several heart conditions.  Additionally, he has a history of broken ankles and knee issues from repeated falls, which further impairs his mobility. To move around each day, Mr. Liboy alternates between using a cane, walker, and/or wheelchair.

2.      At least once a month, Mr. Liboy makes the trip from the Bronx to lower Manhattan to visit his doctors for the treatment of his conditions.  Mr. Liboy's current doctors include his primary care doctor (who he has been seeing for over forty years), his cardiologist (who he has been seeing for approximately twenty years) and various specialists, including a pain medicine

specialist.  All of these doctors' offices are located in lower Manhattan.  Mr. Liboy takes the train and multiple buses to attend his doctors' appointments.  The round trip takes him about five hours (sometime more), and during his trips he risks falling and exacerbating his medical conditions.  In fact, he has fallen down multiple times during these trips over the past several years.

3.  Mr. Liboy's doctors strongly recommend that to protect his health and reduce the risk of his conditions worsening, it is crucial that he both live closer to his medical care and live in an apartment with more space to allow him to conduct physical therapy exercises and have sufficient room to move around with his mobility devices (*i.e.*, cane, walker, and wheelchair).

4.  Since 2016, Mr. Liboy—who currently lives in a one-bedroom apartment with his brother, also a person with mobility impairments—has requested from Defendant NYCHA an apartment transfer to accommodate his disabilities.  Specifically, he has requested a transfer to a two-bedroom apartment in lower Manhattan or nearby Brooklyn, which will offer more space for him and his brother to conduct physical therapy exercises in their apartment and will allow them to be closer to Mr. Liboy's medical providers.

5.  In May 2017, NYCHA authorized a reasonable accommodation transfer and placed Mr. Liboy on the waitlist for a two-bedroom apartment at Rutgers Houses, another public housing development located in the Lower East Side of Manhattan.

6.  However, in December 2018, Baychester—the housing development project at which Mr. Liboy resides—converted to project-based Section 8 under the Rental Assistance Demonstration ("RAD")/Permanent Affordability Commitment Together ("PACT") Program. Following this conversion, NYCHA unilaterally removed Mr. Liboy from the waitlist for the two-bedroom apartment at Rutgers Houses and did not give him the opportunity to contest this removal via a grievance procedure or otherwise, in violation of his rights to due process.

7.     Since that time, Mr. Liboy has repeatedly been in contact with NYCHA to obtain an apartment transfer to a two-bedroom apartment in lower Manhattan or nearby Brooklyn. Rather than grant this request, NYCHA has constructively denied his request by offering him two alternatives that do not accommodate his disabilities: (i) a transfer to a two-bedroom apartment in Baychester, the same development in the Bronx at which he currently resides; or (ii) the use of a portable Section 8 voucher for a qualifying apartment in the private rental market, which Mr. Liboy would need to find on his own.

8.     A transfer to another unit at Baychester is inadequate to accommodate Mr. Liboy's disabilities because it would not change where he currently resides—he would continue to risk his health and well-being by undertaking the long commutes to his doctors.

9.     Meanwhile, a portable Section 8 voucher is also inadequate for two reasons:

a.     Mr. Liboy is unable to view and visit apartments on his own, given his mobility impairments.   Prior to commencing this action, Mr. Liboy requested that Defendants identify and confirm that an individual is available to view apartments on Mr. Liboy's behalf—Defendants have not done so.  It is dangerous enough that Mr. Liboy must take a five-hour roundtrip to visit his doctors in lower Manhattan every month.   On top of that, forcing him to attend apartment viewings far away from where he lives and potentially for months on end, given the competitive nature of apartment hunting in New York City, would exert an unreasonable amount of additional physical pain on his body.

b.     A portable Section 8 voucher is insufficient to cover the average rent for a two-bedroom apartment in lower Manhattan or nearby Brooklyn.  Whereas Defendants have offered Mr. Liboy a voucher that would cover a monthly rent of up to $2,808,

currently the average rental price for a 2-bedroom apartment in Manhattan is over $6,000, and in Brooklyn, over $4,000.[1]  Plus, with his limited social security income, Mr. Liboy is unable to front the costs associated with renting in the private market, including the security deposit, first month's rent, and moving expenses. Defendants' proffered accommodations simply do not get Mr. Liboy the one thing he needs—to live in a 2-bedroom, subsidized apartment in lower Manhattan or nearby Brooklyn.

10.    The RAD/PACT Program mandates that tenants converting from public housing to project-based Section 8 be afforded the same rights that they had while they were public housing tenants.  As a matter of law, Mr. Liboy would have been afforded a right to transfer to another unit within NYCHA's portfolio as a public housing resident, but such a right was taken away from him when he was removed from the waitlist (which he had been on for nearly two years) and continues to be taken away from him through NYCHA's denial of his transfer request to a NYCHA unit in lower Manhattan or nearby Brooklyn.

11.    NYCHA's policy, pattern or practice is to treat RAD/PACT tenants differently than public housing tenants when it comes to reasonable accommodation transfer requests.  Public housing tenants have a right to request a reasonable accommodation transfer to any other public housing development as may be necessary for the treatment of their disabilities, whereas RAD/PACT tenants are denied such an opportunity.  Instead, they are stuck with either transferring within their own RAD/PACT development or having to find an apartment in the private market on their own with a portable Section 8 voucher.  Neither of these options properly accommodates Mr.

---

[1] *See* Elliman Report, *Manhattan, Brooklyn and Queens Rentals*, October 2022, *available at* https://www.elliman.com/resources/siteresources/commonresources/static%20pages/images/corporate-resources/q4_2022/rental-10_2022.pdf

Liboy or any other RAD/PACT tenant in his same position (*i.e.*, tenants who need to move locations and do not have the physical ability to go apartment hunting).

12.     By creating a blanket restriction in terms of where RAD/PACT tenants are able to transfer as a reasonable accommodation, NYCHA systematically violates the Americans with Disabilities Act and other civil rights laws.   In order for RAD/PACT tenants' reasonable accommodation requests to be meaningfully assessed, they must be afforded the same transfer options available to public housing tenants.   Moreover, public housing tenants who convert to RAD/PACT tenants should not be summarily removed from the public housing transfer waitlist purely on account of such conversion.   But that is exactly what happened to Mr. Liboy.

13.     NYCHA's actions and omissions do not provide Mr. Liboy with a reasonable accommodation and injure him, entitling him to declaratory, monetary and injunctive relief.

**PARTIES**

14.     Plaintiff Mark Liboy is a PACT/RAD tenant residing in a one-bedroom apartment at 1851 Schieffelin Place in the Bronx, NY ("Baychester"), a housing complex overseen by NYCHA.

15.     Defendant NYCHA, a public development corporation in the City of New York, provides subsidized housing to low-income residents of the city.   NYCHA is the largest municipal public housing authority in North America, operating or overseeing more than 300 housing developments in New York City, which consist of over 175,000 apartments.   NYCHA is a body corporate and politic established by the New York State Legislature as set forth in § 401 of the New York Public Housing Law.   NYCHA receives local funds as well as funding from the United States Department of Housing and Urban Development ("HUD") through an Annual Contribution Contract ("ACC").   NYCHA is a public housing agency as defined by the United States Housing

Act of 1937, 42 U.S.C. §1437 (the "Housing Act"), and administers federally assisted low-income housing as authorized by the Housing Act and implementing regulations.

16.     Defendant Gregory Russ is a chairperson of NYCHA and is responsible for its operations.  This Complaint is brought against him in his official capacity.

17.     Defendant Lisa Bova-Hiatt is the interim Chief Executive Officer of the New York City Housing Authority and is responsible for its operations.  This Complaint is brought against her in her official capacity.

18.     Upon information and belief, Defendants Russ, Bova-Hiatt and NYCHA maintain their principal place of business at 90 Church Street, New York, NY 10007.

## VENUE AND JURISDICTION

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; 28 U.S.C. § 1343 and 42 U.S.C. § 1983 for actions arising under laws providing for the protection of civil rights; 29 U.S.C. § 794(a) as an action pursuant to Section 504 of the Rehabilitation Act of 1973; and 42 U.S.C. § 12133 as an action pursuant to the Americans with Disabilities Act of 1990.  This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367 because these claims are related and arise out of a common nucleus of operative facts as the federal law claims.

20.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Defendants are domiciled in New York, New York.

## RELEVANT FACTS

### I.     Mr. Liboy's Current Housing Conditions

21.     Plaintiff Mark Liboy is a disabled 55-year-old tenant living with his brother, Michael Liboy, in a one-bedroom apartment in the Baychester housing development, located at

1851 Schieffelin Place, Bronx, NY 10466.  Mr. Liboy has lived at this address for over 11 years. Michael Liboy moved in to live with his brother in 2018.

22.     Until December 2018, Baychester was a public housing development under Section 9 of the U.S. Housing Act of 1937, owned and operated by NYCHA.

23.     Mr. Liboy suffers from multiple chronic medical conditions which affect his mobility, including but not limited to: lumbar radiculopathy, degeneration of lumbar intervertebral disc, myalgia/myositis, cervical spondylosis without myelopathy, neck pain, lumbar spondylosis, arthropathy, inflammation of sacroiliac joint, lumbar sprain, sacroiliac joint pain, invertebral disc disorder, osteoarthritis of knee, and bilateral carpal tunnel syndrome.

24.     Mr. Liboy's disabilities affect his mobility and limit his ability to perform major life activities such as entering and exiting buildings, walking around, and traveling/commuting outside.  He uses a cane, walker and/or wheelchair at various points in the day to move around both inside and outside his apartment.

25.     Mr. Liboy's sole household income comes from Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") payments.  These are benefits administered by the U.S. Social Security Administration to disabled individuals who have limited income and resources.

26.     Mr. Liboy's brother has also been diagnosed with several chronic medical conditions which severely limit his mobility, including spinal stenosis, a pinched nerve, and arthritis.

27.     Mr. Liboy's current one-bedroom apartment is not suitable for two tenants, particularly ones with mobility issues.  Due to space constraints, he sleeps in the living room and

his brother sleeps in the bedroom. Mr. Liboy and his brother have difficulty performing physical therapy exercises to improve their medical conditions due to the lack of space.

28.     To treat his medical conditions, Mr. Liboy regularly visits several medical care providers. These providers include his primary care doctor of over forty years, his cardiologist of nearly twenty years, who treats his heart conditions, and various specialists, including a pain medicine specialist. These providers' offices are located in lower Manhattan.

29.     Baychester is located in the Bronx, NY. To visit his doctors from his home, Mr. Liboy must take a train and sometimes multiple buses to commute to lower Manhattan. This trip involves multiple transfers, which means that Mr. Liboy cannot simply find a seat to rest for the duration of his trip to the doctor's offices and back. Given his mobility impairments, the commute is more challenging and time-consuming because the train station closest to Mr. Liboy does not have an elevator, and he must use stairs to access the train platform. His commute is further impeded because he cannot bring his walker or use his wheelchair, given the lack of elevator. The total round trip to his doctors can take over five hours, and even longer if—as he must do sometimes—Mr. Liboy visits more than one doctor in a single trip.

30.     Over the past several years, Mr. Liboy has fallen down multiple times during his trips.

31.     By the time he reaches his doctors, Mr. Liboy is exhausted from his commute. Additionally, he constantly fears that he will risk further injury and that his conditions will worsen with each subsequent trip. Due to the arduous and challenging nature of each trip to the doctor, Mr. Liboy tries to limit the number of visits he makes to his doctors, and therefore is unable to obtain the full medical care that he needs.

## II.    Mr. Liboy's Initial Request for a Reasonable Accommodation

32.    Mr. Liboy's doctors have urged that Mr. Liboy needs to be relocated closer to his doctors and in a bigger space in order to prevent any further exacerbation of his medical conditions. *See* Ex. F (Letter from Hudson Medical).

33.    NYCHA's policy provides "reasonable accommodations" in housing for, among others, public housing residents.[2]  NYCHA defines "reasonable accommodation" in housing as "a change, modification, or alteration in policy, procedure, practice, or program, that provides a qualified individual with a disability an equal opportunity to participate in, or benefit from, a program or activity, as exists for individuals who are not disabled."[3]

34.    Upon information and belief, when a NYCHA tenant transfers between two NYCHA-owned buildings pursuant to a reasonable accommodation, the tenant is not responsible for paying the cost of moving expenses and other moving-related fees like a security deposit.

35.    Since 2016, Mr. Liboy has been seeking a reasonable accommodation transfer from his one-bedroom apartment at Baychester to a two-bedroom apartment at Rutgers Houses, another public housing development located in the Lower East Side of Manhattan.  Not only would the two-bedroom apartment be more suitable for his and his brother's needs, but Rutgers Houses is also much closer to his medical providers in lower Manhattan and living there would significantly lower his burden in attending doctors' appointments.

36.    In May 2017, NYCHA authorized a reasonable accommodation transfer and placed Mr. Liboy on the waitlist for a two-bedroom apartment at Rutgers Houses.  *See* Ex. A (May 10, 2017 Letter from NYCHA).

---

[2] *NYCHA Standard Procedure Manual: SP 040:12:1, Reasonable Accommodations In Housing For Applicants, Section 8 Voucher Holders, and NYCHA Residents*, NYCHA, at 1 (Revised 06/03/2021); *available at* https://www.nyc.gov/assets/nycha/downloads/pdf/SP040121_Reasonable_Accomodation.pdf
[3] *Id.* at 3.

37.     However, when Baychester converted to the RAD/PACT Program, Mr. Liboy was removed from the waitlist and was given no opportunity to contest this removal.  *See* Ex. B (December 11, 2018 Letter from NYCHA).

## III.    Baychester's Conversion from NYCHA to the RAD/PACT Program

38.     In December 2018, Baychester converted from public housing to project-based Section 8 housing under the RAD/PACT Program.  *See* Ex. B (December 11, 2018 Letter from NYCHA).

39.     The RAD/PACT Program is a HUD program that allows NYCHA to convert public housing to privately run Section 8 housing by bringing in private developers, landlords and management companies who rehabilitate and manage buildings in need of repairs.

40.     Under the statute implementing the RAD/PACT Program, tenants who have been converted from NYCHA to RAD/PACT tenants "*shall*, at a minimum, *maintain the same rights* under such conversion as those provided under sections 6 and 9 of the [Housing] Act."[4]  Among these rights are public housing transfer and grievance procedures.

41.     The Department of Housing and Urban Development's *RAD Fair Housing, Civil Rights, and Relocation Notice* (the "RAD Fair Housing Notice") is a notice for PHAs (the owners of a housing project prior to the RAD conversion), Project Owners (the owners of a housing project after the RAD conversion) and RAD development partners that is intended to address "fair housing and civil rights statutory and regulatory requirements."[5]

---

[4] *See* P.L. 112-55 as amended (emphasis added); 42 U.S.C. 1437f "Rental Assistance Demonstration" note (emphases added).
[5] *See* RAD Fair Housing, Civil Rights, and Relocation Notice, page 1, *available at* https://www.hud.gov/sites/documents/16-17HSGN_16-17PIHN.PDF

42.     Under the RAD Fair Housing Notice, PHAs and Project Owners are required to "[i]dentify[] and maintain[] existing and pending reasonable accommodations" during the conversion process.[6]

43.     The RAD Fair Housing Notice also cautions that "[a]ny prohibitions in this Notice on implementing relocation do not apply to residents requesting public housing transfers, moves pursuant to the Violence Against Women Act ("VAWA") or *reasonable accommodation moves*."[7]

44.     In addition, during the Baychester RAD/PACT conversion process, NYCHA informed Baychester tenants via letter that it would preserve a high degree of control and involvement post-conversion.  The letter stated: "NYCHA continues to own the land and *be involved in the development* while the day-to-day operations will be run by C+C Apartment Management, LLC", and that NYCHA will "*remain actively involved* in your development by administering the Section 8 program, inspecting apartments, and *managing the wait list*."  *See* Ex. C (Resident Letter) (emphases added).

45.     Despite the above statutory and regulatory framework commanding that RAD-converted tenants maintain the same rights they had as public housing tenants, including the right to a reasonable accommodation transfer to another public housing development as appropriate, NYCHA denied such rights to Mr. Liboy.

46.     In particular, as a matter of policy, pattern or practice, NYCHA maintains that once a public housing tenant converts to the RAD program, HUD regulations prevent it from transferring a tenant to either another RAD complex or to another public housing development. NYCHA historically has purportedly relied on 24 C.F.R. § 983.261 to support its position. However, this regulation applies to families who *choose* to move out of their project-based Section

---

[6] *Id.* at 15.
[7] *Id.* at 61 (emphasis added).

8 apartment, indicating that "[i]f the family has *elected* to terminate the lease [at any time after the first year of occupancy], the PHA must offer the family the opportunity for continued tenant-based rental assistance, in the form of either assistance under the voucher program or other comparable tenant-based rental assistance."[8]

47.     However, this regulatory provision has nothing to do with a situation in which a disabled tenant *needs* a transfer in order to safely use and enjoy his home, pursuant to federal, state and/or local civil rights laws.

48.     NYCHA's policy, pattern or practice of refusing to allow a RAD/PACT tenant to transfer to either a different RAD/PACT development or a public housing complex as may be necessary for the treatment of their disabilities violates such tenant's rights to a reasonable accommodation.

## IV.     Mr. Liboy's Attempts to Obtain Reasonable Accommodations Following the Baychester's RAD/PACT Conversion

49.     After Baychester's 2018 RAD/PACT conversion and Mr. Liboy's removal from the NYCHA transfer waitlist, he requested to be transferred multiple times.  He made requests to both C&C Apartments, the new management company, and NYCHA.  These requests went unanswered.

50.     Most recently, Mr. Liboy filed another reasonable accommodation transfer request with the Brooklyn NYCHA Customer Contact Center on March 3, 2022.  *See* Ex. D (March 3, 2022 Reasonable Accommodation Transfer Request).  He provided a copy of the reasonable accommodation request form, medical verification of his disabilities, and copies of correspondence.

---

[8] 24 C.F.R. § 983.261(a) and (b) (emphasis added).

51.     On or around May 10, 2022, Mr. Liboy was notified that he was approved for a two-bedroom apartment transfer within Baychester, but was not told if or when he would be transferred.

52.     On or around May 18, 2022, Mr. Liboy, through counsel, reached out to representatives from NYCHA's Real Estate Development Office.

53.     On May 24, 2022 and May 27, 2022, NYCHA, through its counsel, informed Mr. Liboy that NYCHA would not effectuate a transfer for Mr. Liboy to another PACT/RAD development.  Instead, NYCHA stated that Mr. Liboy was approved for 2-bedroom voucher and had two options:  (i) if he wanted to transfer within Baychester, Mr. Liboy would be given the option to transfer to a 2-bedroom unit at Baychester pending availability; and (ii) if he wished to move out of Baychester, Mr. Liboy would be granted a tenant-based voucher to be used on the private rental market.  *See* Ex. E (May 2022 Email correspondence between Manhattan Legal Services and NYCHA).

## V.     NYCHA's Failure to Provide a Reasonable Accommodations

54.     The two options provided by NYCHA in May 2022 are inadequate to accommodate Mr. Liboy's disabilities.

55.     With respect to remaining at Baychester, as discussed above, Mr. Liboy has serious mobility impairments that require him to be close to his medical providers and the current commute from the Bronx to his medical providers in lower Manhattan is extremely burdensome.  Indeed, his doctors have indicated that if he does not move closer to his medical care in lower Manhattan, his conditions may worsen due to the strain of his regular commutes.

56.     With respect to the tenant-based voucher, Mr. Liboy's serious mobility impairments, discussed above, prevent him from being able to expend the time and effort necessary

to find housing in the private rental market that would accept a voucher within the budget.  Putting in the time and physical effort to find an apartment far away from where he currently lives—on top of the already precarious commute he must undertake to visit his doctors in lower Manhattan— would exert an unreasonable amount of additional physical pain on his body.  In addition, the risk of Mr. Liboy suffering a dangerous fall while looking for a new apartment, likely for months on end due to the competitive nature of apartment hunting in New York City, would significantly increase.

57.     Further, a two-bedroom Section 8 tenant-based voucher is an insufficient amount to rent a two-bedroom apartment in lower Manhattan or nearby Brooklyn.  The current Voucher Payment Standard for a two-bedroom apartment covers a maximum rent of $2,527.  Even though during pre-litigation negotiations NYCHA offered to increase such maximum rent to $2,808, such amount still falls significantly short of the median rent in Manhattan for a 2-bedroom apartment, where the median rent is currently over $6,000, or Brooklyn, where the median rent is over $4,000.[9]

58.     Furthermore, as recent media reports and litigation have highlighted, there is widespread source of income discrimination in New York City, which practically makes it very difficult for tenants with vouchers to find a suitable apartment with a landlord willing to accept their vouchers.[10]

---

[9] *See supra* note 1.

[10] Stephanie Wykstra, *Vouchers can help the poor find homes. But landlords often won't accept them.*, Vox (Dec. 10, 2019), https://www.vox.com/future-perfect/2019/12/10/21001692/housing-vouchers-discrimination-racism-landlords; Matthew Haag, *'She Wants Well-Qualified People': 88 Landlords Accused of Housing Bias*, New York Times (March 15, 2021), https://www.nytimes.com/2021/03/15/nyregion/real-estate-lawsuit-section-8-discrimination.html.

59.     New York City has also been experiencing dramatic rent inflation in recent months, making it even more difficult for tenants to find apartments that are affordable enough for the Section 8 tenant-based voucher program.[11]

60.     Even if Mr. Liboy were able to find an apartment in the private rental market, there is no guarantee that he and his brother would be able to remain there with the same rights as they would have in a RAD/PACT or other development within NYCHA's portfolio, since private landlords can increase rents and refuse to renew leases.  This potential housing instability would have devastating effects on Mr. Liboy's and his brother's health.

61.     In September 2022, Mr. Liboy, through counsel, relayed his concerns regarding the inadequacy of the proposed accommodations to NYCHA.  *See* Ex. G (September 13, 2022 Letter from Manhattan Legal Services to NYCHA).

62.     In response, in September 2022 NYCHA offered to "pay the fee for a broker, if necessary" and "increase the Voucher Payment Standard" to $2,808.  *See* Ex. H (September 21, 2022 Letter from NYCHA to Manhattan Legal Services).  NYCHA said that it could "connect Mr. Liboy to the Mayor's Office of Public Engagement, which can help Mr. Liboy locate a suitable apartment by sending available apartments to him based on the size of the voucher and his location preferences as they come online, scheduling viewings, interfacing with the landlord, and assisting as he leases up with his voucher."  *Id.*  NYCHA indicated that it was willing to discuss "potential alternative accommodations."  *Id.*

---

[11]  Mihir Zaveri, *Rents Are Roaring Back in New York City*, New York Times (March 7, 2022), https://www.nytimes.com/2022/03/07/nyregion/nyc-rent-surge.html; Myrian Garcia, *Inflation sparks 30% rent spike for two-bedroom apartments in New York City*, report finds, AM NY (Feb. 28, 2022), https://www.amny.com/real-estate/rent-for-two-bedroom-apartments-in-new-york-city-spikes-by-30-report-finds/; Anjali Sundaram, *New York City rents jump 22.8% in November, as the rental market bounces back*, CNBC (Dec. 9, 2021), https://www.cnbc.com/2021/12/09/new-york-city-rents-jump-22point8percent-in-november-as-rental-market-bounces-back.html.

63.     However, NYCHA's September 2022 offer is not a reasonable accommodation for two reasons.  *First*, due to Mr. Liboy's medical conditions, physically commuting to visit the apartments would pose an unreasonable risk to his health and well-being.  Thus, Mr. Liboy inquired whether NYCHA or the Mayor's Office would be able to provide assistance in physically viewing the apartments on his behalf or virtually showing him the apartments.  *See* Ex. I (September and October 2022 Email Correspondence between Manhattan Legal Services and NYCHA).  *Second*, given his disabilities and limited income, Mr. Liboy is unable to pay moving expenses and the required security deposit to obtain an apartment in the private rental market.  If he moved to a NYCHA building, he would not need to cover such expenses.  Thus, he inquired whether NYCHA would be able to cover these costs as well.

64.     In response to the above-referenced concerns, NYCHA added a representative from the New York City Mayor's Office to the correspondence to explain the extent to which the Office would be able to assist Mr. Liboy with virtually viewing the apartments.  NYCHA also indicated that it "d[oes] not have the ability to pay for Mr. Liboy's moving expenses or security deposit." *See* Ex. I (September and October 2022 Email Correspondence between Manhattan Legal Services and NYCHA).

65.     In its September 2022 offer, NYCHA had also said it was "reaching out" to C&C Management, Mr. Liboy's current property manager, to see whether it had any "available non-PACT two-bedroom apartments in lower Manhattan or [nearby] Brooklyn." *See* Ex. H (September 21, 2022 Letter from NYCHA to Manhattan Legal Services).  However, it later confirmed that C&C Management in fact "*does not* currently have any available units that satisfy Mr. Liboy's location preferences."  *See* Ex. I (September and October 2022 Email Correspondence between Manhattan Legal Services and NYCHA).

66.     Mr. Liboy, through counsel, has followed up with the representative from the New York City Mayor's Office and has inquired further about NYCHA's ability to pay the security deposit and moving expenses.  *See* Ex. I (September and October 2022 Email Correspondence between Manhattan Legal Services and NYCHA).

67.     As of the date of the filing of this lawsuit, Mr. Liboy has not received a further response from NYCHA or the representative from the New York City Mayor's Office.

68.     Each day that Mr. Liboy continues to live in his current apartment at Baychester he suffers harm because he still lives in close quarters with his brother, which prevents him from being able to properly carry out his physical therapy. Moreover, he continues to be required to make the burdensome journey to his medical providers' office, thus further endangering his health.

69.     NYCHA's refusal to offer Mr. Liboy a reasonable accommodation causes him ongoing stress, anxiety, humiliation, and physical harm during his five-hour roundtrip commutes to his medical providers.

## FIRST CAUSE OF ACTION

**Violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq*.**
**(Against All Defendants)**

70.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

71.     A cause of action for violation of the ADA is created by 42 U.S.C. § 12188(a).

72.     Under the ADA, the term "disability" is defined as: (a) physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "[M]ajor life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking,

breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

73.   Plaintiff is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2).

74.   Defendant NYCHA is a "public entity" as defined by 42 U.S.C. § 12131(1)(b).

75.   Defendant NYCHA, as a public entity under the ADA, may not utilize criteria or methods of administration that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; and may not limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.  28 C.F.R. §§ 35.130(b)(1)(vii), 35.130(b)(3)(i).

76.   NYCHA is required to provide reasonable accommodations to qualified persons with disabilities to allow them to participate in its programs in accordance with the ADA and its own Administrative Plan.  *See* NYCHA Admin Plan, Sec. II D.[12]

77.   NYCHA has been on notice of Mr. Liboy's disability at least since his initial reasonable accommodation request relating to the facts herein, in 2016.

78.   To the extent that NYCHA considers any of the accommodations requested in this action a change in their policies, such a policy change is required by the ADA unless it amounts to an undue burden.

79.   It does not unduly burden the Defendants to: (i) return Mr. Liboy to his original position on the Rutgers Houses waitlist, on which he maintained a position prior to the Baychester RAD conversion in December 2018; (ii) arrange a transfer to another RAD/PACT development in lower Manhattan or nearby Brooklyn for Mr. Liboy; or (iii) provide assistance with physically

---

[12] *Available at* https://www.nyc.gov/assets/nycha/downloads/pdf/hcpvadministrative.pdf

viewing apartments, together with fronting the moving costs associated with placing a portable voucher in the private market.

80.     Defendants Russ and Bova-Hiatt in their official capacity as chair and interim chief executive officer of NYCHA, respectively, are responsible for ensuring the entity's compliance with all federal and state laws and regulations, including the ADA.

81.     As a result of Defendants' violation of the ADA, Plaintiff has suffered injuries, including without limitation, ongoing stress, anxiety, humiliation, and physical harm during his five-hour roundtrip commutes to his medical providers.

82.     Plaintiff has been "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity, or [has been] subjected to discrimination by any such entity" within the meaning of the ADA.  42 U.S.C. § 12132; *see also* 28 C.F.R. § 35.130(a).

83.     Plaintiff accordingly has standing to bring this action under 42 U.S.C. § 12133 and 29 U.S.C. § 794a(a)(2).

84.     Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn constitute discrimination against Plaintiff on the basis of disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the ADA, 42 U.S.C. § 12132 *et seq*., and the corresponding federal regulations of 28 C.F.R. § 35.150.

## SECOND CAUSE OF ACTION

**Violation of the Rehabilitation Act, 42 U.S.C. 794 *et seq.* (Against All Defendants)**

85.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

86.     A cause of action for violation of the Rehabilitation Act is created by 42 U.S.C. § 1983.

87.     Plaintiff is a qualified "individual with a disability" within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(20).

88.     As a result of the Defendants' violation of the Rehabilitation Act by failing to accommodate Plaintiff's disabilities, Plaintiff has suffered injuries.

89.     As a result of these injuries, Plaintiff has standing to seek relief under the Rehabilitation Act as set forth herein.

90.     Defendant NYCHA's housing program is a "program or activity" within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(b).

91.     Defendants Russ and Bova-Hiatt in their official capacity as chair and interim chief executive officer of NYCHA, respectively, are responsible for ensuring the entity's compliance with all federal and state laws and regulations, including the Rehabilitation Act, 29 U.S.C. § 794.

92.     Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn constitute discrimination on the basis of disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the Rehabilitation Act, 29 U.S.C. § 794.

93.     Plaintiff has been and continues to be harmed by Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn, in violation of the Rehabilitation Act.

94.     Consequently, Plaintiff is "aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance" under section 504 of the Rehabilitation Act, within the meaning of 29 U.S.C. § 794a(a)(2).

95.     Plaintiff accordingly has standing to bring this action under 29 U.S.C. § 794a(a)(2).

### THIRD CAUSE OF ACTION

**Violation of the Fair Housing Act, 42 U.S.C. § 3603 *et seq.* (Against All Defendants)**

96.     Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

97.     A cause of action for violation of the FHA is created by 42 U.S.C. § 3613.

98.     Plaintiff is disabled and/or handicapped within the meaning of Title VIII of the Civil Rights Act, also known as the Fair Housing Act ("FHA").

99.     Baychester is in a multiple-unit dwelling of more than four units, and thus the FHA applies.  *See* 42 U.S.C. §§ 3602(b); 3603.

100.     Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn constitute discrimination against Plaintiff in the provision of services or facilities in connection with Plaintiff's dwelling in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3603 *et seq.*

101.    As a result of Defendants' violation of the ADA, Plaintiff has suffered injuries, including without limitation, ongoing stress, anxiety, humiliation, and physical harm during his five-hour roundtrip commutes to his medical providers.

102.    Plaintiff is an "aggrieved person" who has been injured by a discriminatory housing practice within the meaning of the FHA, 42 U.S.C. § 3602, because he has been and continues to be harmed by Defendants' failure to accommodate his disabilities in violation of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988.

<b><u>FOURTH CAUSE OF ACTION</u></b>

<b>Violation of Due Process Clause of the Fourteenth Amendment of the U.S. Constitution (Against All Defendants)</b>

103.    A cause of action for violation of the U.S. Constitution is created by 42 U.S.C. § 1983.

104.    Plaintiff has a property interest in his waitlist position to transfer to Rutgers Houses as a reasonable accommodation because, as a recipient of public assistance, he has a protected property interest in continuing to receive this assistance.  He gained his position on the waitlist pursuant to his application for a reasonable accommodation transfer and NYCHA's authorization of that transfer request in 2017.

105.    To terminate this property interest, procedural due process requires, among other things, an opportunity to be heard at a pre-termination hearing, a right to be represented by counsel at the hearing, a written decision (including the reasons for the determination and the evidence on which the decisionmaker relied) and an impartial decisionmaker.

106.    In December 2018, Plaintiff's property interest in his waitlist position to transfer to Rutgers Houses was terminated when Defendants unilaterally removed him from the waitlist.

107.    Defendants did not give Plaintiff the opportunity to be heard at a pre-termination hearing prior to his removal from the waitlist to transfer to Rutgers Houses.

108.    Without the important safeguard of a hearing, Plaintiff lost his position on the waitlist (which he held for nearly two years) and has since been unable to obtain a reasonable housing accommodation for his disabilities.

109.    This removal was a violation of Plaintiff's rights to procedural due process under the Fourteenth Amendment of the U.S. Constitution.

110.    Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**Violation of the U.S. Housing Act, 42 U.S.C. § 1437d (Against All Defendants)**

111.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

112.    A cause of action for violation of the Housing Act is created by 42 U.S.C. § 1983.

113.    NYCHA is a public body that administers federally assisted low-income housing as authorized by the Housing Act and implementing regulations and is a "public housing agency" under the Housing Act.

114.    Defendants Russ and Bova-Hiatt in their official capacity as chair and interim chief executive officer of NYCHA, respectively, are responsible for ensuring the entity's compliance with all federal and state laws and regulations, including the Housing Act.

115.    Pursuant to Section 6 of the Housing Act, public housing agencies shall "establish and implement an administrative grievance procedure under which tenants be advised of the specific grounds of any proposed adverse public housing agency action" and "will have an

opportunity for a hearing before an impartial party upon timely request." *See* 42 U.S.C. § 1437d(k)(1)-(2).

116.    In December 2018, Plaintiff's current residence, the Baychester, was converted from assistance under Section 9 of the Housing Act.

117.    Prior to this conversion, Plaintiff was on a waitlist to transfer to Rutgers Houses, another public housing residence.

118.    Following the conversion, Defendants unilaterally removed Plaintiff from the waitlist to transfer to Rutgers Houses, without an opportunity to contest the removal.  Defendants' refusal to reinsert Plaintiff on the transfer waitlist to Rutgers Houses continues to this day.

119.    Plaintiff's removal from the waitlist to transfer was an adverse public housing agency action.

120.    Defendants violated Section 6 of the Housing Act because Plaintiff was not given an opportunity for a hearing regarding his removal from the waitlist for Rutgers House.

121.    Pursuant to 42 U.S.C. § 1983, Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

**Violation of New York State Human Rights Laws, N.Y. Exec. Law § 290 *et seq.*
(Against All Defendants)**

122.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

123.    Plaintiff is a disabled and/or handicapped person within the meaning of the New York State Human Rights Law.

124.    Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn constitute

discrimination against Plaintiff on the basis of disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*

125.    As a result of such discrimination, Plaintiff is unable to have equal use and enjoyment of his apartment and is excluded from full participation in the project-based Section 8 housing program.

126.    Plaintiff has suffered injury as a result of Defendants' discrimination against him and consequently has a cause of action as a person aggrieved by an unlawful discriminatory practice under N.Y. Exec. Law § 297(9).

127.    Plaintiff is entitled to recover damages in an amount to be determined at trial, and injunctive relief, pursuant to N.Y. Exec. Law § 297(9).

<u>**SEVENTH CAUSE OF ACTION**</u>

**Violation of New York City Human Rights Laws,
N.Y.C. Admin. Code § 8-101 *et seq.* (Against All Defendants)**

128.    Plaintiff realleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

129.    Plaintiff is a disabled and/or handicapped person within the meaning of the New York City Human Rights Law.

130.    Defendants' removal of Plaintiff from the Rutgers Houses waitlist and denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby Brooklyn constitute discrimination against Plaintiff on the basis of disability in the provision of services or facilities in connection with Plaintiff's dwelling in violation of the New York City Human Rights Law, N..Y.C. Admin. Code § 8-101 *et seq.  See* N.Y.C. Admin Code § 8-107(5), (15).

131.    As a result of such discrimination, Plaintiff is unable to live safely and with dignity in his apartment, to have full use an enjoyment of his apartment, and to enjoy all the key benefits of the RAD/PACT Program.

132.    But for Defendants' unlawful discrimination against Plaintiff, he would be able to live safely and with dignity in his apartment, have full use and enjoyment of his apartment, and to enjoy all the key benefits of the RAD/PACT Program.

133.    Plaintiff has suffered injury as a result of Defendants' discrimination against him and consequently has a cause of action as a person aggrieved by an unlawful discriminatory practice under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be made and entered in his favor and against Defendants, and that this Court enter a judgment:

(1)    Declaring that Defendants violated:

    (A)    Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132 *et seq.*, and its implementing regulations;

    (B)    Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and its implementing regulations;

    (C)    Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3603 *et seq.*, and its implementing regulations;

    (D)    The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution;

    (E)    The U.S. Housing Act, 42 U.S.C. 1437d, and its implementing

regulations;

(F)     New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and its
        implementing regulations; and

(G)     New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*,
        and its implementing regulations.

(2)     Enter final injunctive relief requiring Defendants to provide Plaintiff a reasonable
accommodation transfer to lower Manhattan or nearby Brooklyn to Plaintiff immediately;

(3)     Enter final injunctive relief requiring Defendants to amend NYCHA's reasonable
accommodation and project-based Section 8 transfer policies and practices to enable all
RAD/PACT tenants to be able to transfer to either a different RAD/PACT development or a
public housing complex as may be necessary for the reasonable accommodation of their
disabilities;

(4)     Enter final injunctive relief requiring Defendants to afford all RAD/PACT tenants
the opportunity to contest adverse agency actions, including but not limited to removal from the
NYCHA waitlist for a reasonable accommodation dwelling;

(5)     Issue a final judgment awarding Plaintiff actual, compensatory, and punitive
damages for injuries and expenses incurred as a result of the violations set forth above in an
amount to be determined at trial;

(6)     Award Plaintiff's reasonable attorney's fees, costs and disbursements pursuant to
29 U.S.C. § 794(a); 42 U.S.C. §§ 1988 and 12133; and 28 CFR § 37.175; and,

(7)     Grant such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        December 6, 2022

/s/ Samantha A. Bui
Samantha A. Bui
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
samantha.bui@alston.com


Luis A. Henriquez Carrero
Neelu T. Pathiyil
Liam M. Lowery
MANHATTAN LEGAL SERVICES
1 W. 125th Street, 2nd Floor
(646) 442-3100
New York, NY 10027
lahenriquez@lsnyc.org
npathiyil@lsnyc.org
llowery@lsnyc.org

*Attorneys for Plaintiff*