# Exhibit G



September 13, 2022

***Via email to Marissa Shaffer (marissa.schaffer@nycha.nyc.gov), Simon Kawitzky (simon.kawitzky@nycha.nyc.gov), Jennifer Hiser (jennifer.hiser@nycha.nyc.gov) and rarequests@nycha.nyc.gov; and the NYCHA self-service portal.***

New York City Housing Authority
Real Estate Development
90 Church Street
New York, NY 10007

Bronx/Manhattan/Queens Customer Contact Center
478 East Fordham Road (1 Fordham Plaza), 2nd Floor,
Bronx, NY 10458

**Re: Reasonable Accommodation Request for Mr. Mark Liboy (of 1851 Schieffelin Place, Apt. 5D, Bronx, NY 10466)**

To Whom it May Concern:

  I am Of Counsel to Manhattan Legal Services and represent Mr. Mark Liboy of 1851 Schieffelin Place, Apt. 5D, Bronx, NY 10466 ("Baychester"), a Permanent Affordability Commitment Together ("PACT")/Rental Assistance Demonstration ("RAD") development. Pursuant to the Fair Housing Act, Americans with Disabilities Act, the Rehabilitation Act, the RAD Statute,[1] and the New York State and City Human Rights Laws, I write on behalf of Mr. Liboy to request a reasonable accommodation transfer to a two-bedroom apartment in a PACT/RAD or New York City Housing Authority ("NYCHA") development within the lower Manhattan geographic area, or areas in Brooklyn close to lower Manhattan, so that Mr. Liboy and his brother, both of whom have mobility impairments, can have ready access to their medical providers as necessary for the treatment of their disabilities.

---

[1] RAD is authorized by the Consolidated and Further Continuing Appropriations Act of 2012 (Pub. L. No. 112-55, approved November 18, 2011), as amended by the Consolidated Appropriations Act, 2014 (Pub. L. No. 113-76, approved January 17, 2014), the Consolidated and Further Continuing Appropriations Act, 2015 (Pub. L. No. 113-235, approved December 16, 2014), the Consolidated Appropriations Act, 2016 (Pub. L. No. 114-113, approved December 18, 2015), the Consolidated Appropriations Act, 2017 (Pub. L. No 115-31, approved May 5, 2017), and section 237 of Title II, Division L, Transportation, Housing and Urban Development, and Related Agencies, of the Consolidated Appropriations Act, 2018 (Pub. L. 115-141, approved March 23, 2018) collectively, the "RAD Statute."

**Manhattan Legal Services** | 1 West 125th Street, 2nd Floor, New York, NY 10027
Phone: 646-442-3100 | Fax: 1-646-882-8712 | www.LegalServicesNYC.org
**Peggy Earisman**, Project Director



Mr. Liboy has lived at Baychester for over 11 years. He lives with his brother, who moved in around 2018. Both Mr. Liboy and his brother have multiple chronic medical conditions which significantly affect their mobility. Given his disabilities, Mr. Liboy has been seeking a reasonable accommodation transfer from Baychester to Rutgers Houses in the Lower East Side since at least 2016 so that he can be closer to his doctors in lower Manhattan and live in a two-bedroom apartment that is suitable for him and his brother. Despite NYCHA authorizing a reasonable accommodation transfer and placing him on the waitlist for Rutgers Houses in May 2017, Mr. Liboy was summarily removed from the public housing transfer list upon his building converting to RAD/PACT in December 2018. Mr. Liboy was afforded no opportunity to contest NYCHA's decision removing him from the waitlist.

After requesting to be transferred multiple times, Mr. Liboy filed another reasonable accommodation transfer request with the Brooklyn NYCHA Customer Contact Center on March 3, 2022. In response, he was informed that NYCHA would not effectuate a transfer for Mr. Liboy to another PACT/RAD development and instead was offered: (i) a transfer to a two-bedroom apartment within Baychester; (ii) or a tenant-based portable voucher which would require Mr. Liboy to find an apartment in the private rental market himself. Neither of these NYCHA offers are reasonable accommodations here. As laid out in this letter, remaining in Baychester is not a reasonable accommodation because Mr. Liboy has serious mobility impairments that require him to be close to his medical providers and the current commute from the Bronx to his medical providers in Lower Manhattan is extremely difficult for him. The voucher alone is also not a reasonable accommodation; Mr. Liboy's physical disabilities prevent him from being able to expend the time and effort necessary to find housing in the private rental market that would accept a voucher within the budget. Mr. Liboy and his disabled brother can only have an equal opportunity to use and enjoy their dwelling with a reasonable accommodation transfer to a safe and suitable apartment, which requires, *inter alia*, a two-bedroom apartment near Mr. Liboy's medical providers. In order to adequately accommodate his disabilities and comply with federal and state anti-discrimination laws, NYCHA must find adequate housing for Mr. Liboy near his medical providers, be it a different RAD development or a NYCHA one, and transfer him.

I.  **Background**

Since at least 2016, Mr. Liboy has been seeking a reasonable accommodation transfer. In May 2017, NYCHA authorized a reasonable accommodation transfer and placed him on the waitlist for Rutgers Houses in lower Manhattan. *See* Transfer Request Approval, annexed hereto as **Exhibit A**. In December 2018, Mr. Liboy received a notice, dated December 11, 2018, stating that the reasonable accommodation transfer could no longer be processed due to his building's RAD/PACT conversion and that he was removed from the public housing transfer list with no opportunity to contest NYCHA's decision. *See* Conversion Letter, annexed hereto as **Exhibit B**.

After his building's 2018 RAD/PACT conversion and his removal from the NYCHA transfer waitlist, Mr. Liboy requested to be transferred multiple times. He made requests to both C&C Apartments, the new management company, and NYCHA. Despite this, Mr. Liboy did not receive a satisfactory reply or any accommodations for his and his brother's disabilities. Most recently, Mr. Liboy filed another reasonable accommodation transfer request with the Brooklyn

NYCHA Customer Contact Center on March 3, 2022. He provided a copy of the reasonable accommodation request form, medical verification of his disabilities, and copies of correspondence. *See* March 2022 Reasonable Accommodation Transfer Request, annexed hereto as **Exhibit C**. In or around May 10, 2022, Mr. Liboy was notified that he has been approved for a two-bedroom apartment transfer within Baychester, but he has not been told if or when he will be transferred.

Subsequently, Mr. Liboy retained Legal Services NYC to represent him in his reasonable accommodation request. On May 18, 2022, Elizabeth Gyori of Legal Services NYC reached out about Mr. Liboy's case to Marissa Shaffer, Vice President of Transactions, Simon Kawitzky, Vice President, Portfolio Planning, and Jennifer Hisner, Senior Advisor to the EVP for Real Estate Development, from NYCHA's Real Estate Development Office. *See* Emails between LSNYC and NYCHA, annexed hereto as **Exhibit D**. Mr. Andrew Lupin, Senior Counsel at NYCHA, informed Ms. Gyori through emails on May 24, 2022, and May 27, 2022, that NYCHA would not effectuate a transfer for Mr. Liboy to another PACT/RAD development. *See id*. Rather, Mr. Lupin stated that Mr. Liboy was approved for 2-bedroom voucher and has two options: if he wished to move out of Baychester, Mr. Liboy would be granted a tenant-based voucher to be used on the private market, and if he wants to transfer within Baychester, Mr. Liboy has the option of transferring to a 2-bedroom unit at Baychester pending availability. *See id*. Both of these options are wholly inadequate reasonable accommodations as discussed above and below.

## II. Legal Overview

In the context of subsidized housing, federal, state and local law—including the Fair Housing Act (FHA), Americans with Disabilities Act (ADA), the Rehabilitation Act, and the New York State and City Human Rights Laws—prohibit discrimination against a tenant who has a disability and requires a reasonable accommodation to have an equal opportunity to use and enjoy a dwelling unit.[2] These statutes require that changes to traditional rules or practices be made as necessary to allow a disabled person to have an equal opportunity to use and enjoy a dwelling.[3] Moreover, these laws "impose[] an affirmative duty upon landlords reasonably to accommodate the needs of handicapped persons."[4]

---

[2] *See* 42 USCS §§ 3604(f)(2), (3)(b) (FHA); 24 CFR 100.204 (FHA implementing regulations); 42 USCS § 12132 (ADA); 28 CFR 35.130(b)(7) (ADA implementing regulations); 29 USCS § 794(a) (Rehabilitation Act); 24 CFR 8.4 (Rehabilitation Act implementing regulations); Executive Law § 296(18)(2) (NYSHLR); NYC Administrative Code 8-107(5) (NYCHRL).

[3] *See*, *e.g.*, *Shapiro v Cadman Towers, Inc.*, 51 F3d 328, 333 (2d Cir 1995) ("[the FHA] require[s] that changes be made to such traditional rules or practices if necessary to permit a person with handicaps an equal opportunity to use and enjoy a dwelling") (quoting H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2186); *Mary Jo C. v NY State & Local Retirement Sys.*, 707 F3d 144, 153 (2d Cir 2013); *Sinisgallo v Town of Islip Hous. Auth.*, 865 F Supp 2d 307, 337 (EDNY 2012) ("The relevant portions of the FHA, ADA, and Section 504 [of the Rehabilitation Act] offer the same guarantee that a covered entity, such as a [public housing authority], must provide reasonable accommodations in order to make the entity's benefits and programs accessible to people with disabilities."); *Matter of Aponte v Olatoye*, 30 NY3d 693, 699 (2018) (Rivera, J. concurring); *Hollandale Apts. & Health Club, LLC v Bonesteel*, 173 AD3d 55, 60-61 (3d Dept 2019).

[4] *United States v California Mobile Home Park Mgt. Co.*, 29 F3d 1413, 1416-1417 (9th Cir 1994) (referencing the FHA and quoting H.R. Rep. No. 100-711, 100th Cong., 2d Sess. 1, 25 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173,

Although a landlord does not need to grant a reasonable accommodation if such would be a fundamental alteration of the nature of the service, program or activity provided,[5] some financial burden associated with the accommodation is not a valid reason to deny such an accommodation.[6] "[W]hether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it."[7]

### III. Mr. Liboy is Entitled to a Reasonable Accommodation Transfer to a Two-Bedroom Apartment in Lower Manhattan

Mr. Liboy is entitled to a reasonable accommodation transfer to a two-bedroom apartment in Lower Manhattan so long as (1) he is a qualified individual with a disability/handicap; (2) the reasonable accommodation requested is necessary to allow him an equal opportunity to use and enjoy his dwelling; and (3) the accommodation is reasonable and not a fundamental alteration of NYCHA's PACT/RAD housing program. NYCHA has already found that Mr. Liboy is eligible for a reasonable accommodation transfer since two have been previously approved in May 2017 and March 2022. *See* **Exhibits A and D**.

*(a) Mr. Liboy is a qualifying individual with a disability/handicap.*

Under the Fair Housing Act ("FHA"), a "handicap" is defined as: (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment."[8] The FHA's implementing regulations define a "physical or mental impairment" as including:

> (1) "Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine"; or
> (2) "Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. The term physical or mental impairment includes, but is not limited to, such diseases and conditions as orthopedic, visual, speech and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, Human Immunodeficiency Virus infection, mental retardation,

---

2186); *see also Sinisgallo*, 865 F Supp 2d at 337; *Matter of Cruz v Schriro*, 51 Misc 3d 1203[A], 2016 NY Slip Op 50363[U], *8 (Sup Ct, NY County 2016).
[5] *Mary Jo C.*, 707 F3d at 153.
[6] *California Mobile Home Park Mgt. Co.*, 29 F3d at 1417.
[7] *Staron v McDonald's Corp.*, 51 F3d 353, 356 (2d Cir 1995); *see also Matter of Aponte*, 30 NY3d at 699, 701-702 (Rivera, J. concurring).
[8] 42 USCS § 3602(h).

emotional illness, drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism."[9]

"[M]ajor life activities" under the FHA are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."[10] The American with Disabilities ("ADA") and Rehabilitation Act have similar definitions that govern when disabled/handicapped persons qualify for protections under both federal statutes.[11]

The New York State Human Rights Law ("NYSHRL") defines "disability" in a similar manner.[12] The New York City Human Rights Law ("NYCHRL") is substantially broader than federal and state law, and defines "disability" to mean "any physical, medical, mental or psychological impairment, or a history or record of such impairment."[13]

Under the FHA, ADA, Rehabilitation Act, NYSHRL and NYCHRL, Mr. Liboy qualifies as an individual with a disability/handicap because he has been diagnosed with multiple chronic medical conditions which affect his mobility, including but not limited to: lumbar radiculopathy, degeneration of lumbar intervertebral disc, myalgia/myositis, cervical spondylosis without myelopathy, neck pain, lumbar spondylosis, arthropathy, inflammation of sacroiliac joint, lumbar sprain, sacroiliac join paint, invertebral disc disorder, osteoarthritis of knee, and bilateral carpal tunnel syndrome. *See* Medical Provider Letter, annexed hereto as **Exhibit E**. Due to these chronic conditions, his doctors have stated Mr. Liboy "needs to be relocated closer to his doctors and in a bigger space in order to prevent any further advancements of his medical conditions." *Id.* These conditions collectively are considered "handicap[s]" and/or "disabilities" under the FHA, ADA, Rehabilitation Act, NYSHRL and NYCHRL. His disabilities affect his mobility and limit his ability to perform major life activities such as entering and exiting his building, walking around, and traveling/commuting outside. As such, Mr. Liboy is a disabled and handicapped individual qualified for protections under each of these statutes.

*(b) A reasonable accommodation transfer to a two-bedroom apartment at another PACT/RAD or other development within NYCHA'S portfolio is necessary to afford Mr. Liboy an equal opportunity to use and enjoy his dwelling.*

Under the law and as NYCHA's own Reasonable Accommodation policy states, NYCHA must ensure that qualified tenants with disabilities have "equal housing opportunities."[14] As stated earlier, in response to his previous reasonable accommodation requests, NYCHA provided Mr. Liboy with two options: (1) a transfer to a 2-bedroom apartment in Baychester pending availability; or (2) a tenant-based voucher for Mr. Liboy to find an apartment himself on the private market. Neither of these offers are adequate reasonable accommodation for Mr. Liboy's disabilities. A reasonable accommodation transfer to another suitable two-bedroom apartment at

---

[9] 24 CFR 100.201.
[10] 24 CFR 100.201.
[11] *See* 42 USCS. § 12102 (ADA); 24 CFR 8.3 (Rehabilitation Act).
[12] *See* NY CLS Exec § 292;
[13] NYC Administrative Code 8-102.
[14] *NYCHA Standard Procedure Manual: SP 040:12:1, Reasonable Accommodations In Housing For Applicants, Section 8 Voucher Holders, and NYCHA Residents*, NYCHA, at 1 (Revised 06/03/2021).

another PACT/RAD or other development within NYCHA'S portfolio in Lower Manhattan or in parts of Brooklyn close to Lower Manhattan is required under disability, fair housing, and human rights law.

As for the first option, Mr. Liboy cannot remain in Baychester even if NYCHA is willing to transfer him to a two-bedroom apartment within it. As stated, Mr. Liboy has multiple chronic conditions which impact his mobility. *See* **Exhibit E.** Mr. Liboy currently receives pain management medication monthly to retain what mobility he currently has. To see his medical providers, he must take the train and sometimes multiple buses to commute to lower Manhattan, taking over an hour-and-a-half each way given his mobility impairments. At times, Mr. Liboy may need to see two specialists in one day. By continuing to reside at Baychester, which is far from his medical providers, his mobility issues would continue to be exacerbated. He has fallen multiple times during this long journey in the last six years and lives in constant fear about further injuring himself during the long commute to his doctors. In addition, Mr. Liboy's brother is disabled with mobility issues as well and therefore remaining at Baychester would also continue to worsen his brother's disabilities. As such, Mr. Liboy and his brother cannot remain in Baychester due to their medical needs and are currently unable to have equal use and enjoyment their PACT/RAD project-based Section 8 unit.

As for the second option, it is not realistic for Mr. Liboy to be given a portable voucher and be required to find an apartment himself in the private market. Even if this accommodation were sufficient for a different tenant, for Mr. Liboy it is not, because his mobility impairments physically prevent him from being able to search for an apartment in the private market in New York City. Putting in the time and physical effort to find an apartment far away from where he currently lives—on top of the already precarious commute he must undertake to visit his doctors in Lower Manhattan—would exert an unreasonable amount of additional physical pain on his body. Plus, the risk of Mr. Liboy suffering a dangerous fall while looking for a new apartment, likely for months on end, would significantly increase. It is unjustified for Mr. Liboy to put his safety on the line because NYCHA refuses to transfer him to another RAD/PACT or NYCHA development in Lower Manhattan or nearby Brooklyn.

Further, currently a two-bedroom tenant-based voucher covers a maximum rent of $2,217. Given the Manhattan rental market, it would be nearly impossible for Mr. Liboy and his disabled brother to find an apartment within this price range in Lower Manhattan or nearby Brooklyn. Plus, as recent media reports and litigation have highlighted, there is widespread source of income discrimination in New York City, which practically makes it very difficult for tenants with vouchers to find a suitable apartment with a landlord willing to accept their voucher.[15] NYC has also been experiencing dramatic rent inflation in recent months, making it

---

[15] Stephanie Wykstra, *Vouchers can help the poor find homes. But landlords often won't accept them.*, Vox (Dec. 10, 2019), https://www.vox.com/future-perfect/2019/12/10/21001692/housing-vouchers-discrimination-racism-landlords; Matthew Haag, *'She Wants Well-Qualified People': 88 Landlords Accused of Housing Bias*, New York Times (March 15, 2021), https://www.nytimes.com/2021/03/15/nyregion/real-estate-lawsuit-section-8-discrimination.html.

even more difficult for tenants to find apartments that are affordable enough for the Section 8 tenant-based voucher program.[16]

Moreover, even if he somehow found an apartment, there is no guarantee that he and his brother would be able to remain there with the same rights as they would have in a PACT/RAD or other development within NYCHA's portfolio, since private landlords can increase rents and refuse to renew leases. This potential housing instability would have devastating effects on Mr. Liboy and his brother's health.

Therefore, a reasonable accommodation transfer to another suitable two-bedroom apartment at another PACT/RAD or other development within NYCHA'S portfolio is required under disability, fair housing, and human rights law.

*(c) A reasonable accommodation transfer is not a fundamental alteration of NYCHA's PACT/RAD program and does not impose undue costs or administrative burdens.*

The structure of the RAD program does not stand in the way of NYCHA's ability to transfer Mr. Liboy to another RAD/PACT or NYCHA development in Lower Manhattan or nearby Brooklyn.

At the outset, NYCHA violated the *RAD Fair Housing, Civil Rights, and Relocation Notice* (the "RAD Fair Housing Notice") in at least two respects. *First*, the Notice requires PHA's and Project Owners to "[i]dentify[] and maintain[] existing and *pending* reasonable accommodations" during the conversion process.[17] As indicated above, at the time that Baychester finalized its RAD conversion in December 2018, Mr. Liboy had an approved and pending reasonable accommodation transfer to Rutgers Houses in the Lower East Side. *See* **Exhibit A**. Rather than maintaining Mr. Liboy's pending transfer, NYCHA did the opposite—it removed Mr. Liboy from the waitlist without any opportunity to contest such removal. *Second*, the Notice cautions that "[a]ny prohibitions in this Notice on implementing relocation do not apply to residents requesting public housing transfers, moves pursuant to the Violence Against Women Act (VAWA) or *reasonable accommodation moves*."[18] Removing Mr. Liboy from the Rutgers Houses waitlist—which concerned a reasonable accommodation move—likewise violated the RAD Fair Housing Notice.

Moreover, NYCHA's behavior contradicts the messages it sent to Baychester tenants. During the Baychester RAD conversion process, NYCHA informed the tenants that it would preserve a high degree of control and involvement post-conversion. The resident letter provided

---

[16] Mihir Zaveri, *Rents Are Roaring Back in New York City*, New York Times (March 7, 2022), https://www.nytimes.com/2022/03/07/nyregion/nyc-rent-surge.html; Myrian Garcia, *Inflation sparks 30% rent spike for two-bedroom apartments in New York City, report finds*, AM NY (Feb. 28, 2022), https://www.amny.com/real-estate/rent-for-two-bedroom-apartments-in-new-york-city-spikes-by-30-report-finds/; Anjali Sundaram, *New York City rents jump 22.8% in November, as the rental market bounces back*, CNBC (Dec. 9, 2021), https://www.cnbc.com/2021/12/09/new-york-city-rents-jump-22point8percent-in-november-as-rental-market-bounces-back.html.
[17] *See* RAD Fair Housing, Civil Rights, and Relocation Notice, page 15, *available at* https://www.hud.gov/sites/documents/16-17HSGN_16-17PIHN.PDF (last visited August 2022) (emphasis added).
[18] *See id.* at page 61 (emphasis added).

to Baychester residents during the conversion process provides that "NYCHA continues to own the land and *be involved in the development* while the day-to-day operations will be run by C+C Apartment Management, LLC." It further provides that NYCHA will "*remain actively involved* in your development by administering the Section 8 program, inspecting apartments, and *managing the wait list*." *See* **Exhibit F** (Resident Letter) (emphases added). Inasmuch as NYCHA preserves the stated level of control and involvement across all RAD developments, especially regarding managing waitlists, it is well-positioned to arrange a reasonable accommodation transfer from one RAD portfolio to a different one. To the extent that NYCHA contends that it is incapable of effectuating a RAD-to-RAD reasonable accommodation transfer, at minimum, NYCHA is fully capable of transferring a tenant from a RAD development to a public housing development, the latter which is fully owned and operated by NYCHA.

In addition, the RAD statute provides that "tenants of such properties with assistance converted from assistance under section 9 shall, at a minimum, *maintain the same rights* under such conversion as those provided under sections 6 and 9 of the Act."[19] Prior to conversion, Mr. Liboy acquired the right to be transferred to Rutgers Houses as a reasonable accommodation. *See* **Exhibit A**. Such right was stripped from Mr. Liboy without due process upon Baychester's conversion, in violation of the RAD statute. *See* **Exhibit B**.

IV. **Conclusion**

NYCHA is required to grant Mr. Liboy's instant reasonable accommodation request to transfer to a two-bedroom unit in lower Manhattan or areas of western Brooklyn close to lower Manhattan to meet the needs of his disabilities. Pursuant to NYCHA's Reasonable Accommodation Policy, I look forward to a reply and decision on this reasonable accommodation request on behalf of Mr. Liboy within five (5) days.[20] Mr. Liboy reserves all rights and remedies.

If you have any questions or require additional information, please feel free to contact me at npathiyil@lsnyc.org or at (646) 442-3174. Thank you.

Sincerely,

*Neelu Pathiyil*

Neelu Pathiyil, Esq.
Manhattan Legal Services - Legal Services NYC, Of Counsel
1 West 125th Street, 2nd Floor,
New York, NY 10027
Tel/Fax: (646) 442-3174
Email: npathiyil@lsnyc.org

---

[19] *See* P.L. 112-55 as amended (emphasis added).
[20] *See* NYCHA Standard Procedure Manual: SP 040:12:1, *Reasonable Accommodations In Housing For Applicants, Section 8 Voucher Holders, and NYCHA Residents*, NYCHA, at 8 (Revised 02/16/2016).