UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————

MARK LIBOY,

                    Plaintiff,

       -against-

GREGORY RUSS, as Chair of the New York City
Housing Authority, LISA BOVA-HIATT, as Interim
Chief Executive Officer of the New York City
Housing Authority, and the NEW YORK CITY
HOUSING AUTHORITY,

                  Defendants.
——————————————————————

Civ. No. 22-10334 (VM)


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


DAVID ROHDE
Interim Executive Vice President for Legal
   Affairs and General Counsel
New York City Housing Authority
Attorney for Defendants
90 Church Street, 11th Floor
New York, NY 10007
(212) 776-5206

Seth E. Kramer
Andrew M. Lupin
 Of Counsel

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ...........................................................................................3

    NYCHA's Public Housing and Section 8 Programs...............................................3

    Plaintiff's Transfer Requests and the
    PACT Conversion of Plaintiff's Development .....................................................5

ARGUMENT ..............................................................................................................6

    I.      Applicable Legal Standard...................................................................6

    II.    Plaintiff's Claims Governing His Removal From
           a Public Housing Transfer Waitlist Are Time-Barred ............................................7

    III.   The Complaint Fails to State a Claim That NYCHA
           Violated Plaintiff's Due Process Rights .....................................................13

    IV.   The Complaint Fails to State a Claim That NYCHA Violated the
           Housing Act by Depriving Plaintiff of a Grievance Hearing ................................15

    V.     Plaintiff Fails to State a Claim That
           NYCHA Violated the Disability Laws .....................................................16

          A.    Plaintiff's Request Constitutes a Fundamental
                 Alteration of the Section 8 Program .....................................................17

          B.    Plaintiff's Request to Transfer Is Based on
                 Preferences Unrelated to the Benefits of the Program..............................20

          C.    NYCHA's Offers to Plaintiff Are Sufficient
                 to Satisfy Its Reasonable Accommodation Obligations..............................22

CONCLUSION.........................................................................................................25

## TABLE OF AUTHORITIES

<div align="right"><u>Page(s)</u></div>

<u>Federal Cases</u>

*273 Lee Ave. Tenants Ass'n. by Sanchez v. Steinmetz*,
330 F. Supp. 3d 778 (E.D.N.Y. 2018) ........................................................................ 11

*American Council of Blind of N.Y. v. City of New York*,
495 F. Supp. 3d 211 (S.D.N.Y. 2020) ......................................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 7

*Bd. of Educ. of North Rockland Cent. Sch. D. v. C.M. on behalf of P.G.*,
744 F. App'x 7 (2d Cir. 2018) .................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 6, 7

*Castellano v. City of New York*,
946 F. Supp. 249 (S.D.N.Y. 1996) ............................................................................ 24

*Chardon v. Fernandez*,
454 U.S. 6 (1981) ........................................................................................................ 12

*Cornwell v. Robinson*,
23 F.3d 694 (2d Cir. 1994) .......................................................................................... 10

*Crenshaw* v. *City of New Haven*,
652 Fed. Appx. 58 (2d Cir. 2016) .............................................................................. 14

*Doe v. Russ*,
Case No. 22 Civ. 4460 (S.D.N.Y. Jul. 14, 2022) ................................................. 22, 23

*Elmenayer v. ABF Freight Sys., Inc.*,
318 F.3d 130 (2d Cir. 2003) ........................................................................................ 10

*Escalera v. New York City Hous. Auth.*,
425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853 (1970) ........................................ 15

*Falinski v. Kuntz*,
38 F.Supp.2d 250 (S.D.N.Y.1999) ............................................................................... 9

**Page(s)**

**Federal Cases (continued)**

*Favourite v. 55 Halley St., Inc.*,
381 F. Supp. 3d 266 (S.D.N.Y. 2019) ......................................................... 9

*Fink v. New York City Dep't of Pers.*,
53 F.3d 565 (2d Cir. 1995) ..................................................................... 22

*Harrington* v. *Cty. of Suffolk*,
607 F.3d 31 (2d Cir. 2010) ..................................................................... 13

*Harris v. City of New York*,
186 F.3d 243 (2d Cir. 1999) ................................................................... 12

*Harris v. HUD*,
1993 WL 276084 (S.D.N.Y. July 16, 1993) ................................................ 16

*Hellenic Am. Neighborhood Action Comm. v. City of New York*,
101 F.3d 877 (2d Cir. 1996) ................................................................... 14

*Higgins v. 120 Riverside Blvd. at Trump Place Condominium*,
2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022) ......................................... 9, 10

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009) ..................................................................... 7

*Kaiser v. Cahn*,
510 F.2d 282 (2d Cir. 1974) ..................................................................... 7

*Kassner v. 2nd Ave. Delicatessen, Inc.*,
496 F.3d 229 (2d Cir. 2007) ..................................................................... 9

*Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergovernmental Affairs*,
2007 WL 4591845 (E.D.N.Y. Dec. 26, 2007) ............................................ 13

*Liberty Resources, Inc. v. Philadelphia Hous. Auth.*,
528 F. Supp. 2d 553 (E.D. Pa. 2007) ................................................. 17, 23

*Logan v. Matveevskii*,
57 F. Supp. 3d 234 (S.D.N.Y. 2014) .......................................................... 9

*Louis v. New York City Hous. Auth.*,
152 F. Supp. 2d (S.D.N.Y. 2016) ..................................................... 17, 18

Page(s)

**Federal Cases (continued)**

*Marinelli v. Chao*,
222 F. Supp. 2d 402 (S.D.N.Y. 2002) ............................................................. 9

*Marks v. Bldg Mgmt Co. Inc.*,
2002 WL 764473 (S.D.N.Y. Apr. 26, 2002) ................................................... 20

*McElwee v. County of Orange*,
700 F.3d 635 (2d Cir. 2012) ........................................................................... 14

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002) .......................................................................................... 9

*Nixon-Tinkelman v. New York City Dep't of Health and Mental Hygiene*,
434 Fed. Appx. 17 (2d Cir. 2011) ................................................................... 21

*Pimentel v. City of New York*,
2001 WL 1579553 (S.D.N.Y. Dec. 11, 2001) ................................................ 21

*Rios* v. *Town of Huntington Housing Authority*,
853 F. Supp. 2d 330 (E.D.N.Y. 2012) ........................................................... 13

*Salute v. Stratford Greens Garden Apts.*,
136 F.3d 293 (2d Cir. 1998) ........................................................................... 20

*Schwarz v. City of Treasure Island*,
544 F.3d 1201 (11th Cir.2008) ....................................................................... 24

*Stone v. 23rd Chelsea Assocs.*,
2020 WL 1503671 (S.D.N.Y. Mar. 30, 2020) ................................................. 9

*Taylor v. The Hous. Auth. of New Haven*,
267 F.R.D. 36 (D. Conn. 2010) ................................................................. 17, 23

*Temple v. Hudson View Owners Corp.*,
222 F. Supp, 3d 318 (S.D.N.Y. 2016) ........................................................... 24

*Tsombanidis v. West Haven Fire Dep't*,
352 F.3d 565 (2d Cir. 2003) ........................................................................... 17

*Tyson-Randolph v. New York City Hous. Auth.*,
Case No. 74-CV-1856 (S.D.N.Y. 1975) ......................................................... 15

**Page(s)**

**Federal Cases (continued)**

*Weaver v. NYCHA*,
2019 WL 7116141 (S.D.N.Y. Dec. 20, 2019) ........................... 16

*Whalen v. CSC TKR, LLC*,
2011 WL 6965740 (S.D.N.Y. Dec. 28, 2011) ........................... 10

*Zaffino v. Metropolitan Gov't of Nashville and Davidson Co, Tennessee*,
688 Fed. Appx. 356 (6th Cir. 2017) ........................... 21

*Zerilli-Edelglass v. New York City Tr. Auth.*,
333 F.3d 74 (2d Cir. 2003) ........................... 7

**State Cases**

*Kimmel v. State of New York*,
49 A.D.3d 1210 (4th Dep't 2008) ........................... 10

*Po So v. Rhea*,
106 A.D.3d 487 (1st Dep't 2013) ........................... 11

**Federal Statutes and Regulations**

F.R.C.P. R. 12 ........................... 1, 6, 18

24 C.F.R. § 5.601 ........................... 4

24 C.F.R. § 5.628 ........................... 4

24 C.F.R. § 5.703 ........................... 16

24 C.F.R. § 966.53 ........................... 16

24 C.F.R. § 982.1 ........................... 4

24 CFR § 982.503 ........................... 24

24 C.F.R. § 983.5 ........................... 4, 20

24 C.F.R. § 983.261 ........................... 5, 19

42 U.S.C. § 1437d ........................... 15, 16

Page(s)

**Federal Statutes and Regulations (continued)**

42 U.S.C. § 1983 ........................................................................................ 7, 14, 15, 16

42 U.S.C. § 3604 ...................................................................................................... 17

42 U.S.C. § 3613 ........................................................................................................ 9


**State Statutes**

N.Y. C.P.L.R. § 214 ................................................................................................ 7, 9

N.Y. Pub. Hous. Law § 401 ...................................................................................... 3

Defendants Gregory Russ, as Chair of the New York City Housing Authority

("NYCHA"), Lisa Bova-Hiatt, as Interim Chief Executive Officer of NYCHA, and NYCHA

(collectively, "Defendants") respectfully submit this memorandum of law in support of their

motion to dismiss the Complaint of Plaintiff Mark Liboy ("Plaintiff") pursuant to Federal Rule of

Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, a project-based Section 8 voucher holder residing in the Bronx, brings this

action against NYCHA, which administers his housing subsidy, and its Chair and Interim CEO,

because he wishes to transfer closer to his medical provider in lower Manhattan and asserts the

tenant-based transfer voucher that NYCHA already has provided is insufficient.  Citing

NYCHA's removal of Plaintiff from a public housing transfer waitlist in 2018, Plaintiff claims

NYCHA failed to adequately accommodate his disability in response to a 2022 reasonable

accommodation request in violation of the Americans with Disabilities Act ("ADA") (First

Cause of Action), the Rehabilitation Act (Second Cause of Action), the Fair Housing Act

("FHA") (Third Cause of Action), the Due Process Clause of the Fourteenth Amendment of the

United States Constitution (Fourth Cause of Action), the United States Housing Act (Fifth Cause

of Action), the New York State Human Rights Law ("NYSHRL") (Sixth Cause of Action), and

the New York City Human Rights Law ("NYCHRL") (Seventh Cause of Action) because it will

not restore him to the public housing transfer waitlist, even though he has not been a public

housing tenant since 2018.

As an initial matter, Plaintiff's claims should be dismissed because they are time-barred

in whole or in part.  Plaintiff concedes that in December 2018, in conjunction with the

conversion of his public housing development to project-based Section 8 through the federal

Rental Assistance Demonstration ("RAD"), which NYCHA has incorporated into a preservation initiative called Permanent Affordability Commitment Together ("PACT"),[1] NYCHA informed him that his transfer request to another public housing development could no longer be processed and advised him to request a Section 8 tenant-based transfer voucher instead. Plaintiff was required under the applicable statutes of limitations to assert claims regarding his removal from the public housing transfer waitlist within, at the latest, three years after his receipt of the December 2018 notice. Plaintiff may not now circumvent the statutes of limitations by combining untimely claims about his removal from the public housing transfer waitlist with claims challenging NYCHA's response to a 2022 reasonable accommodation request.

Even if they were not time barred, Plaintiff's Fourth and Fifth Causes of Action alleging NYCHA violated the 14th Amendment and the Housing Act by failing to afford him due process or a grievance hearing fail as a matter of law. Not only was his position on a public housing transfer waitlist not a cognizable property interest, the substitution of one means of transferring out of his apartment (while retaining his housing subsidy) for another is not an adverse action that would have entitled him to a grievance hearing had he even requested one.

Furthermore, Plaintiff cannot state a cause of action NYCHA violated disability laws by refusing to transfer him to a public housing development near his doctor's office in lower Manhattan. As Plaintiff concedes, NYCHA provided him with a two-bedroom tenant-based

---

[1]    The RAD program is a Section 8 conversion mechanism that enables public housing agencies, such as NYCHA, to attract hundreds of millions of dollars in private investment capital to renovate and rehabilitate aging buildings and respond to a dramatic decrease in federal funding for public housing. Under RAD/PACT, NYCHA converts Section 9 public housing subsidies into Section 8 project-based vouchers, thereby financially stabilizing its developments and establishing new financing options for critically needed repairs, while also ensuring residents maintain rights consistent with the protections afforded by public housing.

transfer voucher he can use in a private residence anywhere in (or out of) New York City, and also offered to (1) pay the fee for a broker, if necessary, who can assist him locate a suitable unit at which he can use his tenant-based voucher, and (2) increase the Voucher Payment Standard for the household to enable NYCHA to subsidize a rental up to 120% of the fair market rent.

Plaintiff's contention these accommodations are insufficient fails for three reasons. *First*, Plaintiff's request that NYCHA transfer him to a specific apartment goes beyond the benefits of – and constitutes a fundamental alteration of – the Section 8 program. As the administrator of the Section 8 program, NYCHA provides housing subsidies to landlords on behalf of program participants. NYCHA is not Plaintiff's landlord and does not provide housing to Section 8 participants. *Second*, even if NYCHA were Plaintiff's landlord, it would not be required to transfer him to lower Manhattan as a reasonable accommodation. Reasonable accommodations are only required where they directly address the disability and are necessary to afford the disabled person access to equal housing opportunity. The disability laws do not require housing providers to accommodate tenants' preferences for specific medical providers or shorter travel time to those medical providers. *Third*, Plaintiff is not entitled to the accommodation of his choice, and the accommodations NYCHA has offered, to the extent Plaintiff is entitled to transfer to a unit closer to his doctors, are eminently reasonable.

Accordingly, the Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

### NYCHA's Public Housing and Section 8 Programs

NYCHA is a public benefit corporation created under state law to provide safe and decent housing for low-income families in the City of New York. *See* N.Y. Pub. Hous. Law § 401.

3

Although created under state law, NYCHA is primarily funded by the federal government, overseen by the United States Department of Housing and Urban Development ("HUD"), and subject to federal statutes and regulations.  NYCHA administers two major low-income housing programs, commonly referred to as Section 8 and Section 9.  Section 9, part of the Housing Act of 1937, provides federal funding for publicly owned, managed, and operated housing developments – commonly referred to as "public housing."

Section 8, created by the Housing and Community Development Act of 1974, uses a different funding model.  Primarily, Section 8 provides federal funding for the Housing Choice Voucher program and the Project-Based Voucher program.  Under the Housing Choice Voucher program, HUD disburses federal funds to public housing agencies ("PHAs"), and PHAs issue vouchers to eligible low-income applicants.  Voucher-holders then use the tenant-based vouchers to rent housing units from private landlords, and the PHA pays the difference between the tenants' monthly rent payments to the private landlord (normally capped at 30% of the tenant's monthly income) and the market-based rent charged for the unit.  *See* 24 C.F.R. § 982.1.  Under the Project-Based Voucher program, which is the program utilized in developments converted under RAD/PACT, tenants also pay no more than 30% of their monthly income towards rent. *See* 24 C.F.R. § 5.628; *see also* 24. C.F.R. § 5.601(a).  However, the voucher subsidies are tied to designated housing units at specific properties.  *See* 24 C.F.R. § 983.5(1).

Under RAD/PACT,[2] public housing buildings are converted to the project-based Section

---

[2]     RAD is authorized by the Consolidated and Further Continuing Appropriations Act of 2012 as amended by subsequent appropriations acts. *See* PIH-2019-23 (HA)/H-2019-09 REV-4 (available at https://www.hud.gov/sites/dfiles/PIH/documents/PIH-2019-23.pdf) (last visited 1/12/2023).

8 program, which allows NYCHA and a PACT partner to generate money for necessary repairs and capital improvements. The PACT partner serves as the landlord and management company for the development and NYCHA administers the project-based Section 8 subsidy payments to the PACT partner on behalf of the residents. *See* Complaint ("Compl.") ¶ 39 & Compl. Exhibit ("Exh.") C (ECF Nos. 1 & 1-3).

**Plaintiff's Transfer Requests and the**
**PACT Conversion of Plaintiff's Development**

Plaintiff resides in a one-bedroom apartment in Baychester Houses in the Bronx, which was a public housing development owned and managed by NYCHA prior to its RAD/PACT conversion in December 2018. *See* Compl. ¶¶ 21-22. In May 2017, NYCHA approved Plaintiff's request to transfer under the public housing program to an apartment in Rutgers Houses in Manhattan, another public housing development owned and managed by NYCHA, and it placed him on the waitlist for a one-bedroom apartment there. *See* Compl. ¶ 36 & Exh. A (ECF No. 1-1).[3] Plaintiff had not been selected for a unit as of December 2018, at which time his public housing development – Baychester Houses – converted under RAD/PACT to the project-based Section 8 program. *See* Compl. ¶ 38. Given Plaintiff was no longer a participant in the public housing program, NYCHA removed him from the Rutgers Houses waitlist and, consistent with the federal regulations governing the project-based Section 8 program, offered him a Section 8 tenant-based transfer voucher, which he could use immediately at any private unit in or out of New York City. *See* Compl. Exh. B (ECF No. 1-2); 24 C.F.R. § 983.261.

Plaintiff did not utilize a Section 8 transfer voucher and remained in his one-bedroom

---

[3]    Although Plaintiff alleges he was approved to transfer to a two-bedroom apartment, the document he cites shows he was approved for a one-bedroom apartment. *See* Compl. ¶ Exh. A.

apartment.  In March 2022, more than three years later, Plaintiff requested NYCHA provide him

with a transfer voucher for a larger size, i.e. a two-bedroom unit, as a reasonable

accommodation.  *See* Compl. ¶¶ 50 & Comp. Exh. D (ECF No. 1-4).  NYCHA informed

Plaintiff it had approved his request and he could either: (1) transfer to a two-bedroom unit

within his current development; or (2) receive a tenant-based voucher for a two-bedroom unit

which he could use anywhere in or out of New York City.  *See* Compl. ¶ 53 & Compl. Exh. E

(ECF No. 1-5).  Following subsequent correspondence between counsel for the parties, in which

Plaintiff requested that NYCHA transfer him to an apartment in "lower Manhattan or areas in

western Brooklyn close to lower Manhattan" (even though his transfer voucher can be used at an

apartment in either of those neighborhoods) or alternatively pay his moving expenses and

security deposit, NYCHA further agreed to: (1) pay the fee for a real estate broker to assist

Plaintiff in finding a suitable unit; (2) connect Plaintiff to the Mayor's Office of Public

Engagement to provide additional assistance; and (3) increase the Voucher Payment Standard for

a two-bedroom apartment, or amount of rent up to which NYCHA would issue subsidy

payments.  *See* Compl. ¶ 62 & Compl. Exhs. H & I (ECF No. 1-8 & 1-9).  Over the course of the

cooperative dialogue, Plaintiff acknowledged he is open to residing in apartments elsewhere in

Manhattan if they are located near transit stations that lead him to his doctors' offices without

transfers, but he ultimately declined NYCHA's offer and instead commenced this action.  *See id.*

## ARGUMENT

### I.  Applicable Legal Standard

To defeat a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A well-pleaded complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss, the court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79.  Moreover, a complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558; *see also Zerilli-Edelglass v. New York City Tr. Auth.*, 333 F.3d 74, 79 (2d Cir. 2003).

## II.    Plaintiff's Claims Governing His Removal From a Public Housing Transfer Waitlist Are Time-Barred

Plaintiffs' causes of action challenging the removal of his name from the public housing transfer waitlist in 2018, in conjunction with the conversion of his development from public housing to Section 8, are time-barred.  Plaintiff purports to bring his Fourth Cause of Action (alleging violation of due process) and Fifth Cause of Action (alleging violation of the U.S. Housing Act) under 42 U.S.C. § 1983.  Federal law provides no statute of limitations for suits brought under Section 1983, but "[i]n the absence of a federal statute of limitations the courts borrow the state statute of limitations applicable to the most similar cause of action." *Kaiser v. Cahn*, 510 F.2d 282, 284 (2d Cir. 1974).  The Second Circuit has held that "the applicable statute of limitations in a federal civil rights case brought in New York is the three years provided by N.Y.C.P.L.R. § 214(2) – liability based on a statute." *Id*.

In the Fourth Cause of Action, Plaintiff claims Defendants "did not give Plaintiff the

opportunity to be heard at a pre-termination hearing prior to his removal from the waitlist to transfer to Rutgers Houses," which Plaintiff concedes occurred in December 2018. *See* Compl. ¶¶ 106-07.  In the Fifth Cause of Action, Plaintiff similarly claims his "removal from the waitlist to transfer [in December 2018] was an adverse public housing agency action" and "Defendants violated section 6 of the Housing Act because Plaintiff was not given an opportunity for a hearing regarding his removal from the waitlist for Rutgers Houses." Compl. ¶¶ 119-20. Plaintiff does not contend or suggest that he was unaware of his removal from the public housing transfer waitlist in December 2018 and in fact attaches to his Complaint the notice he received from NYCHA, dated December 11, 2018, which expressly advised him that his development was scheduled to convert through RAD on December 28, 2018 and "due to the imminent RAD conversion at Baychester, [his] transfer request to another NYCHA development can no longer be processed." *See* Compl. ¶ 37 & Compl. Exh. B.

Plaintiff filed the instant complaint on December 7, 2022, nearly four years after NYCHA mailed the December 11, 2018 notice advising him that he had been removed from the public housing transfer waitlist due to his development's imminent conversion to project-based Section 8 through RAD/PACT. *See* Compl.  Therefore, Plaintiff's Fourth and Fifth Causes of Action are both time-barred and must be dismissed.

Correspondingly, Plaintiff's First Cause of Action (alleging violation of the ADA), Second Cause of Action (alleging violation of the Rehabilitation Act), Third Cause of Action (alleging violation of the FHA), Sixth Cause of Action (alleging violation of the NYSHRL), and Seventh Cause of Action (alleging violation of the NYCHRL) also are time-barred at least in part insofar as, in each of them, Plaintiff purports to challenge "Defendants' removal of Plaintiff from

8

the Rutgers Houses waitlist." *See* Compl. ¶¶ 84, 92, 100, 124, & 130.  The statute of limitations

for suits brought under the ADA and the Rehabilitation Act is three years.  *See American*

*Council of Blind of N.Y. v. City of New York*, 495 F. Supp. 3d 211, 242 (S.D.N.Y. 2020); *Logan*

*v. Matveevskii*, 57 F. Supp. 3d 234, 267 (S.D.N.Y. 2014).  The statute of limitations for suits

brought under the FHA is two years, running from the occurrence of an alleged discriminatory

housing practice.  *See* 42 U.S.C. § 3613(a)(1)(A); *Logan*, 57 F. Supp. 3d at 267.  Both the

NYSHRL and NYCHRL have three-year statutes of limitations.  *See* C.P.L.R. § 214(2); *Kassner*

*v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 238 (2d Cir. 2007).  Accordingly, irrespective of

which federal or local law Plaintiff invokes, he may not at this stage challenge his December

2018 removal from a public housing waitlist.

Although Plaintiff suggests the statutes of limitations should be tolled because he

"continues to be harmed" by his removal from the Rutgers Houses waitlist (*see* Compl. ¶ 93),

that removal was a discrete event that occurred on December 11, 2018, not a continuing

violation.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges.").  As this Court has recognized, "[o]verall, '[t]he courts of this Circuit

have generally been loath to invoke the continuing violation doctrine and will apply it only upon

a showing of compelling circumstances.'"  *Marinelli v. Chao*, 222 F. Supp. 2d 402, 413

(S.D.N.Y. 2002) (citing *Falinski v. Kuntz,* 38 F. Supp. 2d 250, 257 (S.D.N.Y.1999)); *see also*

*Higgins v. 120 Riverside Blvd. at Trump Place Condominium*, 2022 WL 3920044, at *13

(S.D.N.Y. Aug. 31, 2022); *Stone v. 23rd Chelsea Assocs.*, 2020 WL 1503671, at *6 (S.D.N.Y.

Mar. 30, 2020); *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 279 (S.D.N.Y. 2019).  For

several reasons, no such compelling circumstances exist here.

First, insofar as Plaintiff's removal from the public housing transfer waitlist in 2018 constituted NYCHA's final act in response to his 2017 reasonable accommodation transfer request, it was a discrete event unrelated to NYCHA's response to his 2022 reasonable accommodation request.  Courts in this Circuit have recognized that denials of reasonable accommodation requests are discrete acts.  *See Elmenayer v. ABF Freight Sys., Inc.,* 318 F.3d 130, 135 (2d Cir. 2003) (employer's rejection of employee's proposed accommodation for religious practices does not give rise to a continuing violation because "[t]he rejection of a proposed accommodation is a single completed action when taken, quite unlike the 'series of separate acts' that constitute a hostile work environment and 'collectively constitute' an unlawful employment practice"); *Higgins,* 2022 WL 3920044, at 16 (holding "each time the Condominium Defendants denied Higgins' request for a reasonable accommodation, they were committing a discrete act that could potentially serve as the basis for an FHA claim" and "[j]ust because the alleged violations were serial does not mean they were continuing"); *Whalen v. CSC TKR, LLC,* 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011) ("repeated denials of requests for a reasonable accommodation do not constitute a continuing violation").[4]  The 2018 removal of Plaintiff from a public housing transfer waitlist was not a "practice" or part of a series of incidents; it was a discrete event that happened once, after which Plaintiff was no longer a public

---

[4]     The continuing violation doctrine is "traditionally applied to hostile work environment claims." *Whalen,* 2011 WL 6965740, at *4; *see, e.g.*, *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir. 1994); *Kimmel v. State of New York,* 49 A.D.3d 1210, 1211 (4th Dep't 2008).  In stark contrast to the rejection of a reasonable accommodation request, which is completed when an action is taken, hostile work environment claims constitute "a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Kimmel*, 49 A.D.3d at 1211.

housing tenant but instead a Section 8 voucher-holder, and it is untethered from his contention –

four years later – that a reasonable accommodation NYCHA offered in 2022 is insufficient.

Second, Plaintiff was aware of his removal from the Rutgers Houses waitlist in December

2018, when his development converted through RAD/PACT and he became a Section 8 voucher-

holder, yet he failed to object at that time. The continuing-violation doctrine "does not apply

where a plaintiff was on notice of what [he] believed was discrimination but 'failed to act in

preservation of [his] rights in spite of [his] knowledge.'" *273 Lee Ave. Tenants Ass'n. by Sanchez

v. Steinmetz*, 330 F. Supp. 3d 778, 792 (E.D.N.Y. 2018) (internal citation omitted). Plaintiff

concedes NYCHA notified him of his removal from the waitlist in 2018 insofar as he attaches

the notice he received informing him of such. *See* Compl. Exh. B. Plaintiff, however, did not

inquire about his removal from the Rutgers Houses waitlist until well beyond the expiration of

any applicable statute of limitations, when his attorneys sent an e-mail to NYCHA in May 2022,

and he did not express an objection to his removal until September 2022. *See* Compl. ¶¶ 52 &

61; Compl. Exhs. E & G. To the contrary, since his development's conversion to project-based

Section 8, Plaintiff has taken full advantage of policies that are only available to Section 8

voucher-holders. For example, he was able to add his brother to his household and thereafter

was given the opportunity to increase his voucher size in order to transfer to a larger apartment,

neither of which would have been permissible had he remained a public housing tenant due to

NYCHA's public housing occupancy standards.[5] *See* Compl. Exhs. D & E; *Po So v. Rhea*, 106

A.D.3d 487, 488 (1st Dep't 2013) ("NYCHA's occupancy standards do not permit an additional

---

[5]     Plaintiff incorrectly alleges he was placed on the waitlist for a two-bedroom apartment at
Rutgers Houses (*see* Compl. ¶¶ 35-36), by misciting Exhibit A to his Complaint, which clearly
specifies "Bedroom Size: 1." Compl. Exh. A.

person to permanently join a household in a one-bedroom apartment unless that person is a spouse, domestic partner, or child under the age of six). Plaintiff also acquiesced in his removal from the Rutgers Houses waiting list insofar as he requested and received a tenant-based Section 8 transfer voucher in March 2019. *See* Compl. Exh. E. If he wished to protest the conversion of his tenancy to project-based Section 8, he should have done so before reaping its benefits.

Third, the notion that Plaintiff continues to experience the consequences of his 2018 removal from a public housing waitlist does not render an otherwise stale claim timely. *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (to determine when discrimination claim accrues, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful"); *Bd. of Educ. of North Rockland Cent. Sch. D. v. C.M. on behalf of P.G.*, 744 Fed. Appx. 7, 9 (2d Cir. 2018) (Rehabilitation Act claim untimely where school district's decision denying residential placement was alleged discriminatory act, but events occurring after accrual date were "alleged manifestations of the consequences of that decision"); *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("We have made it clear that a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act"). All events have reverberating consequences. However, Plaintiff cannot revive his untimely claims by asserting his anticipated challenges using a tenant-based transfer voucher in 2022 stem from the 2018 conversion of his public housing tenancy to project-based Section 8.

Therefore, any claims based on Plaintiff's removal from the Rutgers Houses waitlist are untimely and the continuing violation doctrine does not apply.

12

**III.    The Complaint Fails to State a Claim That**
     <u>**NYCHA Violated Plaintiff's Due Process Rights**</u>

Even if it were not time-barred, which it clearly is, Plaintiff's Fourth Cause of Action

(violation of due process) fails because his position on a public housing transfer waitlist is not a

cognizable property interest.  *See* Compl. ¶ 104; *Harrington* v. *Cty. of Suffolk*, 607 F.3d 31, 34

(2d Cir. 2010) ("To state a claim for deprivation of property without due process of law, a

plaintiff must identify a property interest protected by the Due Process Clause.").  Although the

mechanism by which he can transfer out of his unit has changed post-conversion, reflecting the

inherent differences in the Section 8 and Section 9 programs, the PACT conversion process did

not negatively affect his tenancy rights in any material way inasmuch as his rent remains capped

at no more than 30% of his adjusted gross household income and he still has the ability to

transfer and continue receiving a rent subsidy.

To the extent courts have recognized a tenant's due process right to a lease, that right

protects a tenant's *continued occupancy* in his or her home, not a "right" to transfer to a specific

public housing development of their choice.  *Cf. Rios* v. *Town of Huntington Housing Authority*,

853 F. Supp. 2d 330, 337 (E.D.N.Y. 2012) ("[E]xisting Section 8 housing tenant[] has a

constitutionally protected interest in the continued occupancy of her rental unit until the end of

her lease term"); *Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. &*

*Intergovernmental Affairs*, 2007 WL 4591845, at *14-15 (E.D.N.Y. Dec. 26, 2007) (recognizing

protected property interest in continuing to receive public assistance).  Plaintiff does not, and

cannot, allege that he lost his government housing subsidy.  Rather, through a regulatory

conversion process from Section 9 to Section 8, he continues to benefit from a housing subsidy

from a similar program.  Plaintiff can point to no genuine property interest in a "waitlist

position" in a specific public housing development, let alone deprivation of such an interest,

when he currently receives a housing subsidy and has been offered a Section 8 transfer voucher,

which he can use immediately, without being placed on a waiting list behind other families or

needing to wait for certain apartments to become vacant as under the public housing program.

Nor can Plaintiff show he was deprived of the "right" to request a reasonable

accommodation.  NYCHA affords public housing tenants *and* Section 8 voucher-holders

reasonable accommodations.  The fact that the types of accommodations offered may vary

depending on the form of subsidy does not mean a protected property interest was taken away.

Accommodations are not one-size-fits-all; they are each tailored to a variety of circumstances.  It

is axiomatic that tenants are not entitled to the reasonable accommodation of their choice so long

as the accommodation offered is reasonable.  *See McElwee v. County of Orange*, 700 F.3d 635,

641 (2d Cir. 2012) ("[a]lthough a public entity must make 'reasonable accommodations,' it does

not have to provide a disabled individual with every accommodation he requests or the

accommodation of his choice").  Therefore, while the accommodation NYCHA offered Plaintiff

after engaging in a cooperative dialogue may not be his first choice or the choice he would have

made before his tenancy converted in 2018, his preferred alternative is not a protected property

interest.  Accordingly, Plaintiff's due process claim fails to state a claim under Section 1983.

*See Crenshaw* v. *City of New Haven*, 652 F. Appx. 58, 59–60 (2d Cir. 2016) (affirming dismissal

of Section 1983 claims for failure to show protected property interest).

Furthermore, Plaintiff cannot plausibly claim the deprivation of a protected interest

without due process of law, because an adequate post-deprivation remedy – in the form of an

Article 78 proceeding – was available under state law.  *See Hellenic Am. Neighborhood Action*

14

*Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) ("Even if HANAC has a protectable property and liberty interest—on which we express no opinion—HANAC, because of the availability of an Article 78 proceeding, was not deprived of such property or liberty without due process of law."). If Plaintiff wished to challenge NYCHA's decision to remove him from the Rutgers Houses waitlist, which he acknowledges NYCHA informed him of in a December 11, 2018 notice, then he could have timely filed an Article 78 proceeding in state court challenging that determination. *See* Compl. ¶ 104 & Compl. Exh. B.

**IV.    The Complaint Fails to State a Claim That NYCHA Violated the Housing Act by Depriving Plaintiff of a Grievance Hearing**

Plaintiff's time-barred Fifth Cause of Action fails to state a claim because he has not alleged he suffered an adverse public housing agency action that would entitle him to a grievance hearing under Section 6 of the Housing Act. *Cf.* 42 U.S.C. § 1437d(k)(1)-(2) (stating HUD shall require public housing agencies to "establish and implement an administrative grievance procedure" and "have an opportunity for a hearing before an impartial party upon timely request"). Plaintiff does not dispute that NYCHA has established administrative grievance procedures in accordance with 42 U.S.C. section 1437d(k)(1)-(2). *See Escalera v. New York City Hous. Auth.*, 425 F.2d 853 (2d Cir.), *cert. denied*, 400 U.S. 853 (1970); *Tyson-Randolph v. New York City Hous. Auth.*, Case No. 74-CV-1856 (S.D.N.Y. 1975) (CMM).

Plaintiff nonetheless alleges his "removal from the waitlist to transfer was an adverse public housing agency action" which entitled him to a hearing. *See* Compl. ¶ 119. Even assuming the Housing Act creates a private right of action to assert a 1983 claim,[6] NYCHA's

---

[6]    Courts in this Circuit have held there is no private right of action under the Housing Act (or, for that matter, the legislation authorizing the RAD program), and certain subsections of the

substitution of his placement on a public housing transfer waitlist (which may or may not have

resulted in an apartment offer on an undeterminable future date) with a Section 8 transfer

voucher (which can be used upon its issuance) is not an adverse action, so neither the Housing

Act nor its implementing regulations entitled Plaintiff to a grievance hearing. *See* 24 C.F.R. §

966.53(a). NYCHA merely informed him it could no longer process his transfer request one

way, but it could process his transfer request a different way instead. Plaintiff does not allege he

even attempted to pursue a grievance or avail himself of NYCHA's grievance procedures when

NYCHA notified him it was no longer processing his public housing transfer due to his

development's conversion through RAD/PACT. Instead, Plaintiff requested and received a

Section 8 transfer voucher from NYCHA. *See* Compl Exh. E (May 24, 2022 email referring to

March 2019 request and subsequent issuance of transfer voucher). Accordingly any claim

asserting NYCHA improperly failed to provide him with a grievance must fail.

## V.    Plaintiff Fails to State a Claim That
##         NYCHA Violated the Disability Laws

In his First, Second, Third, Sixth, and Seventh Causes of Action, Plaintiff maintains

NYCHA violated the ADA, Rehabilitation Act, FHA, NYSHRL, and NYCHRL through its

"denial of his transfer to a NYCHA or RAD/PACT apartment in lower Manhattan or nearby

---

Housing Act do not provide an actionable right under section 1983. *See, e.g.*, *Weaver v. NYCHA*, 2019 WL 7116141, at *4 (S.D.N.Y. Dec. 20, 2019) (dismissing claims asserted under 42 U.S.C. § 1437d(j)(3) and 24 C.F.R. § 5.703(c), d(1) & (g) and collecting cases). To the contrary, Section 1437 is a "broad statement of policy [that] does not create a private right of action." *Harris v. HUD*, 1993 WL 276084, at *3 (S.D.N.Y. July 16, 1993). Although courts in other Circuits have concluded section 1437(k) of the Housing Act provides a private right of action for individuals to challenge whether a PHA's grievance procedures comply with the statute, the Second Circuit has not held that the text of this subsection unambiguously creates a right for residents to challenge a PHA's alleged failure to afford them a grievance.

Brooklyn."  Compl. ¶¶ 84, 92, 100, 124, 130.  "[A] governmental entity engages in a discriminatory practice if it refuses to make a 'reasonable accommodation' to 'rules, policies, practices or services when such accommodation may be necessary to afford [a handicapped person] equal opportunity to use and enjoy a dwelling.'"  *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003) (quoting 42 U.S.C. section 3604(f)(3)(B)).  As discussed below, this Court should dismiss these claims because Plaintiff fails to state a cause of action.

### A.   Plaintiff's Request Constitutes a Fundamental Alteration of the Section 8 Program

Plaintiff's request – that NYCHA place him in a public housing apartment in lower Manhattan or nearby Brooklyn – goes beyond the benefits of the Section 8 program and constitutes a fundamental alteration of the Section 8 program.  As Judge Buchwald held in *Louis v. New York City Hous. Auth.*, 152 F. Supp. 2d 143 (S.D.N.Y. 2016), as administrator of the Section 8 program, NYCHA provides housing subsidies; it is not the landlord and does not provide housing to Section 8 participants.  Judge Buchwald elaborated that the "meaningful access" analysis under the disability laws must focus on the services provided by the public entity, and the plaintiff's demand in that action that NYCHA provide housing modified to accommodate the tenant's disabilities would constitute the provision "of additional or different substantive benefits" and would "fundamentally alter the benefits provided by the program."  *See id.* at 152-53 (citing *Taylor v. The Hous. Auth. of New Haven*, 267 F.R.D. 36, 75 (D. Conn. 2010) (noting Section 8 voucher-holders "face severe hardships in finding apartments in New Haven that include the features necessary to make them accessible and safe" but denying reasonable accommodation claims because requests would be a fundamental alteration of the program); *Liberty Resources, Inc. v. Philadelphia Hous. Auth.*, 528 F. Supp. 2d 553 (E.D. Pa. 2007)

(describing services offered through Section 8 program and holding "the onus is on [Section 8] participants to find their own rental units" and "[t]he regulations generally put the onus of locating an available unit in the marketplace wholly on the voucher holder")).

Acceding to Plaintiff's demand NYCHA relocate him to a particular unit in lower Manhattan or nearby Brooklyn exceeds NYCHA's obligations under the Section 8 program and would fundamentally alter that program. Although whether a reasonable accommodation request would constitute a fundamental alteration of the program may sometimes depend on the facts of the case, the Court in *Louis* found approving the requested accommodation would constitute a fundamental alteration of the Section 8 program and granted NYCHA's motion to dismiss pursuant to Rule 12(b)(6). *See Louis*, 152 F. Supp. 2d 143.

The fact Plaintiff at one time was a participant in the public housing program, and at that time NYCHA was Plaintiff's landlord, does not impact the analysis of Plaintiff's claims here against NYCHA as administrator of Plaintiff's Section 8 subsidies. Plaintiff's development converted from public housing to project-based Section 8 in December 2018 (*see* Compl. ¶ 6), more than four years ago. Although NYCHA's Tenant Selection and Assignment Plan ("TSAP"),[7] which governs transfers of public housing residents, allows tenants to transfer to be closer to medical providers, that does not mean such transfers are required under the disability laws as reasonable accommodations.

Plaintiff contends the RAD/PACT program mandates tenants be afforded the same rights they had while they were public housing tenants (*see* Compl. ¶ 10), but Plaintiff maintains the

---

[7]    The TSAP is available at https://www1.nyc.gov/assets/nycha/downloads/pdf/TSAPlan.pdf (last accessed 1/30/2023), and is annexed to the Declaration of Seth Kramer for the Court's convenience as Exhibit A.

same right to transfer apartments he possessed as a public housing resident. The means by which he can transfer out of his Section 8 unit and the types of housing units to which he can transfer, however, reflect inherent differences between the Section 8 and Section 9 programs. NYCHA is permitting Plaintiff to transfer in accordance with the regulations governing the project-based Section 8 program. *See* 24 C.F.R. 983.261(a) & (b) ("The family may terminate the assisted lease at any time after the first year of occupancy" and "[i]f the family has elected to terminate the lease in this manner, the PHA must offer the family the opportunity for continued *tenant-based* rental assistance, in the form of either assistance under the voucher program or other comparable *tenant-based* rental assistance) (emphasis added).

Plaintiff claims the applicable regulation, 24 C.F.R. section 983.261, which is aptly titled "Family right to move," is "permissive" because it allows for the issuance of tenant-based assistance if a project-based voucher holder has "elected" to terminate the lease, arguing Plaintiff did not elect to terminate his lease because he did not elect to leave but instead "needs" to leave. *See* Comp. ¶ 46. Plaintiff's argument makes no sense because, of course, Plaintiff elected to transfer out of his unit. His requested move from the unit is no less an "election" because his reasons for doing so stem from the distance he travels to visit his doctors. Indeed, the same regulation also mandates tenant-based assistance for tenants who seek to move because they are victims of domestic violence or stalking. *See* 24 C.F.R. § 983.261(c)(2).

Plaintiff also notes that NYCHA maintains a waitlist for each PACT development, which consists of applicants for the public housing and Section 8 programs (*see* Compl. ¶ 44), but those waitlists do not include existing project-based Section 8 households. Project-based vouchers are, by their very nature, non-transferrable because they are tied to a particular unit, so moving a

tenant from a project-based unit in one development to a project-based unit in another development (or a unit in a public housing development) would nullify what makes them project-based in the first place. *See* 24 C.F.R. 983.5(1). If the voucher-holder wishes to transfer out of the development, then the voucher would not be tied to the project and the voucher-holder must transfer through a tenant-based voucher.

The Complaint shows that issuance of a transfer voucher provides Section 8 participants with rights comparable to – or even greater than – residents in public housing. Plaintiff admits that NYCHA approved his public housing transfer request in May 2017, but he was still on the waitlist to be selected for a vacant apartment in Rutgers Houses with applicants and other tenants wishing to transfer in December 2018, when his development converted under RAD/PACT. *See* Compl. ¶¶ 5-6, 36-37. Whereas public housing tenants must be placed on a lengthy waitlist for a limited number of vacant units, Section 8 participants do not need to wait to receive a transfer voucher and utilize that voucher to move anywhere in or outside of New York City. Thus, Plaintiff's request NYCHA provide him with housing as a reasonable accommodation constitutes a fundamental alteration of the Section 8 program and is not required as a matter of law.

### B. Plaintiff's Request to Transfer Is Based on Preferences Unrelated to the Benefits of the Program

Even if NYCHA were Plaintiff's landlord, it would not be required to transfer him to lower Manhattan or nearby Brooklyn as a reasonable accommodation. Reasonable accommodations are only required where they directly address the disability and are necessary to afford the disabled person access to equal housing opportunity. *See Salute v. Stratford Greens Garden Apts.*, 136 F.3d 293, 301 (2d Cir. 1998); *Marks v. Bldg Mgmt Co. Inc.*, 2002 WL 764473, at *7 (S.D.N.Y. Apr. 26, 2002). Here, Plaintiff does not dispute he has been able to use

and enjoy housing in the Bronx, but instead, he bases his request on his preference to utilize doctors in Tribeca and shorten the amount of time it takes to make monthly visits to his medical providers.  *See* Compl. ¶¶ 55-56.

Although courts have not addressed transfers to move closer to medical providers as reasonable accommodations in the housing context, courts have been clear in the employment context that requests to transfer closer to medical providers are requests based on personal preferences and those transfers are not required under the disability laws.  *See Pimentel v. City of New York*, 2001 WL 1579553, at *15 (S.D.N.Y. Dec. 11, 2001) (denying reasonable accommodation claim where transfer request would have "greatly reduced the time that [she] spent commuting for her interferon injections and weekly blood work" because plaintiff did not claim she was unable to receive her treatment, only that transfer would reduce her commuting time, and "her transfer requests expressed no more than a personal preference"); *see also Zaffino v. Metropolitan Gov't of Nashville and Davidson Co, Tennessee*, 688 Fed. Appx. 356, 358-39 (6th Cir. 2017) (request to remain at location over concerns about how long it would take to travel to medical providers "are unrelated to the essential functions of her job, but instead address problems she faces outside of the workplace").[8]

Similarly, Plaintiff's request to transfer to an apartment closer to his medical providers is based on his preferences, both as to his choice of doctors and his desire to shorten the amount of

---

[8]     In *Nixon-Tinkelman v. New York City Dep't of Health and Mental Hygiene*, 434 Fed. Appx. 17 (2d Cir. 2011), the Court recognized that employers may have an obligation to grant reasonable accommodations to assist employees with a commute to the office, including by potentially transferring the employee.  Whereas an accommodation relating to a commute to work may be necessary to allow an employee to perform the job functions, a transfer to reduce travel time to a doctor is unrelated to performance of the job functions and outside the scope of the employer's obligations.  *See Pimentel*, 2001 WL 1579553.

travel time, and is not necessary for him to enjoy the benefits of subsidized housing.  Indeed,

there are plenty of doctors in the Bronx, and, regardless, Plaintiff does not explain why he cannot

use Access-a-Ride to take him to medical appointments and limit any risk of physical injury

traveling to or from his appointments.  Inasmuch as the allegations in the Complaint fail to allege

any issues with respect to Plaintiff's ability to enjoy his apartment based on his location and only

contend Plaintiff must travel too far to visit the medical providers of his choice, dismissal for

failure to state a claim is appropriate.

     **C.**     **NYCHA's Offers to Plaintiff Are Sufficient**
                   **<u>to Satisfy Its Reasonable Accommodation Obligations</u>**

     The offers NYCHA has made, to the extent Plaintiff is even entitled to transfer to a unit

closer to his doctors as a reasonable accommodation, are sufficient under the law.  The

disabilities laws do not require government agencies to provide individuals with the particular

accommodation requested "so long as the accommodation provided is reasonable."  *Fink v. New

York City Dep't of Pers.*, 53 F.3d 565, 567 (2d Cir. 1995).  NYCHA offered to: (1) issue Plaintiff

a two-bedroom transfer voucher he could use anywhere in New York City; (2) refer Plaintiff to

the Mayor's Office of Public Engagement and pay the fee for a broker, if necessary, who could

assist Plaintiff in locating a suitable unit, and (3) increase the Voucher Payment Standard for the

household in order to enable NYCHA to subsidize a rental up to 120% of the fair market rent

("FMR").  *See* Comp. ¶¶ 53, 62 & Compl. Exh. H.

     In *Doe v. Russ*, Case No. 22 Civ. 4460 (S.D.N.Y. Jul. 14, 2022), the plaintiff raised

claims similar to those raised here, arguing NYCHA was obligated to transfer her from a PACT

unit to a another PACT development or a public housing development as a reasonable

accommodation.  In denying her motion for a preliminary injunction, Judge Liman held the

22

offered accommodation, a tenant-based Section 8 voucher allowing her to receive Section 8
assistance in a private unit anywhere in or out of New York City, "may be reasonable even if it
requires some work from the individual seeking the accommodation, and even if exercising that
accommodation comes along with some difficulty."  *See* Kramer Declaration Exhibit B
(Decision and Order in *Doe*) at 14; *see also Taylor*, 267 F.R.D. at 75 (noting Section 8 voucher-
holders "face severe hardships in finding apartments in New Haven that include the features
necessary to make them accessible and safe"); *Liberty Res*., *Inc.*, 528 F. Supp. 2d at 568-69 ("the
onus is on [Section 8] participants to find their own rental units").

Plaintiff believes NYCHA's proposed accommodations are insufficient for several
reasons.  First, Plaintiff maintains his mobility impairments preclude him from searching for
apartments.  *See* Compl. ¶ 56.  Although Plaintiff's mobility impairment may make it more
difficult for him to find a unit with a tenant-based voucher, the Complaint contains no allegations
suggesting Plaintiff has even attempted to locate an apartment.  In any event, that alleged
difficulty does not render the offered accommodation unreasonable.  Moreover, NYCHA has
offered Plaintiff additional accommodations, including payment of the fee for a broker and
referral to the Mayor's Office of Public Engagement; both a broker and staff from the Mayor's
Office can attempt to locate suitable units on Plaintiff's behalf and ease his burden.  *See* Compl.
¶ 62 & Compl. Exh. H.  Even as a public housing resident, Plaintiff would have been required to
visit an offered unit and meet with the management office in advance of transferring to a new
unit.  *See* TSAP (Kramer Decl. Exh. A) at 30-31.

Second, Plaintiff speculates he will not be able to locate a unit for a rent amount under
the Voucher Payment Standard for a two-bedroom apartment.  *See* Compl. ¶¶ 57-58.  Plaintiff

also contends he would be unable to afford the moving expenses and security deposit associated with utilizing a Section 8 transfer voucher, which he mistakenly asserts he would not need to cover if he moved to a NYCHA-owned building.  *See* Compl. ¶ 63; *see also* TSAP (Kramer Decl. Exh. A) at 30-31.  Plaintiff's concerns pertaining to the rent amount and moving expenses are unrelated to his disability, but instead are concerns faced by all low-income Section 8 voucher-holders, whether disabled or not.  As a matter of law, Plaintiff is not entitled to special treatment over non-disabled Section 8 voucher-holders.  *See Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1226 (11th Cir. 2008) (holding "'equal opportunity' can only mean that handicapped people must be afforded the same (or 'equal') opportunity to use and enjoy a dwelling as non-handicapped people, which occurs when accommodations address *the needs created by the handicaps*") (emphasis in original); *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 325 (S.D.N.Y. 2016) (holding "[t]he statutes under which Plaintiffs bring suit are not intended to elevate Plaintiffs above their fellow residents" because "[t]he law requires only equality, not that a "superior *advantage*" be given") (emphasis in original); *Castellano v. City of New York*, 946 F. Supp. 249, 255 (S.D.N.Y. 1996) ("Defendants' refusal to provide this special treatment to plaintiffs does not violate any of the federal disability statutes and modification of it is not necessary to avoid disability based discrimination").

Nevertheless, NYCHA has agreed to increase the Voucher Payment Standard for Plaintiff.  In accordance with 24 CFR section 982.503(a), NYCHA "must adopt a payment standard schedule that establishes voucher payment standard amounts for each [Fair Market Rent ("FMR")] area in the PHA jurisdiction."  This rate is to be used to calculate monthly housing assistance payments and must be established within the 90%-110% range of the jurisdiction's

24

FMR.  NYCHA's current Voucher Payment Standard is set at 108% of the 2022 HUD FMR rates for the New York City Metro Area.  NYCHA agreed to increase the Voucher Payment Standard for Plaintiff to 120 percent of the FMR for a two-bedroom unit, or $2,808 per month. *See* Compl. ¶ 62 & Compl. Exh. H.

Third, Plaintiff argues that even if he locates a suitable unit with his Section 8 voucher, there is no guarantee he could remain because private landlords can increase rents or refuse to renew leases. *See* Compl. ¶ 60.  Plaintiff's speculation as to what may occur in the future is irrelevant to his current claims.  If Plaintiff utilizes his Section 8 voucher and finds a suitable unit, he would receive housing close to his doctor, as he requests.

## CONCLUSION

Defendants respectfully request this Court dismiss the Complaint and grant them such other and further relief as the Court deems just and proper.

Dated: New York, NY
      February 6, 2023

<div style="margin-left:40%">

DAVID ROHDE
Interim Executive Vice President for Legal
   Affairs and General Counsel
New York City Housing Authority
Attorneys for Defendants
90 Church Street, 11th Floor
New York, NY 10007
(212) 776-5206

By: _____
    Seth E. Kramer
    Seth.Kramer@nycha.nyc.gov

</div>