**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MARK LIBOY,

                    Plaintiff,

         - against -

GREGORY RUSS, LISA BOVA-HIATT, and
NEW YORK CITY HOUSING AUTHORITY,

                    Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/29/23

**22 Civ. 10334 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    Plaintiff Mark Liboy ("Plaintiff" or "Liboy") brought
this action against defendants Gregory Russ ("Russ") and Lisa
Bova-Hiatt ("Bova-Hiatt"), both in their official capacities
as executive officers of the New York City Housing Authority
("NYCHA"), which is also named as a defendant (collectively
with Russ and Bova-Hiatt, "Defendants"). Liboy alleges that
Defendants violated the Americans with Disabilities Act (the
"ADA"), 42 U.S.C. §§ 12132, et seq.; the Rehabilitation Act
(the "RA"), 42 U.S.C. §§ 794, et seq.; the Fair Housing Act
(the "FHA"), 42 U.S.C. §§ 3603, et seq.; the Due Process
Clause of the Fourteenth Amendment to the United States
Constitution; the U.S. Housing Act (the "Housing Act"), 42
U.S.C. § 1437d; the New York State Human Rights Law (the
"NYSHRL"), N.Y. Exec. Law §§ 290, et seq.; and the New York
City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-
101, et seq. (See "Complaint" or "Compl.," Dkt. No. 1.) Liboy

seeks declaratory relief, injunctive relief, and actual, compensatory, and punitive damages. Now pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (See "Motion to Dismiss" or "Motion," Dkt. No. 27; "Brief" or "Br.," Dkt. No. 29.) For the reasons set forth below, Defendants' Motion is **GRANTED**.

### I.   BACKGROUND

A.   FACTUAL BACKGROUND[1]

Liboy is a 55-year-old NYCHA tenant who, at the time his complaint in this action was filed, was residing in a one-bedroom apartment in the Baychester housing development ("Baychester"), located in the Bronx, New York. NYCHA is a public development corporation of the City of New York ("NYC" or the "City") that provides subsidized housing to low-income residents of the City. Russ is the Chair of NYCHA, overseeing its operations. Bova-Hiatt serves as the interim Chief Executive Officer of NYCHA and is likewise responsible for its operations.

Liboy is a person with an ADA recognized disability. He suffers from multiple chronic medical conditions that affect

---

[1] Except as otherwise noted, the factual background derives from the Complaint and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See *infra* Section II.

his mobility, including, but not limited to, spinal stenosis, herniated disks, and several heart conditions. Liboy has resided in Baychester in a NYCHA one-bedroom apartment unit for over eleven years. In 2018, his brother, Michael Liboy ("Michael"), moved in with him. Like Liboy, Michael suffers from several medical conditions that limit his mobility. Liboy's current doctors, including his primary care physician and his cardiologist, are located in lower Manhattan. Liboy has been seeing his primary care physician for over forty years and his cardiologist for approximately twenty years. Because Liboy relied on public transportation to commute from the Bronx to lower Manhattan for his medical appointments, a round-trip visit to his doctors from Baychester could take over five hours, and he risked getting injured during his commute.

Until December 2018, Baychester was a public housing development as defined under Section 9 of the Housing Act. In 2016, Liboy made a request to NYCHA that he be relocated to a different apartment to accommodate his disabilities. He specifically requested a transfer to a two-bedroom apartment in lower Manhattan or nearby in Brooklyn, so that Liboy and his brother would have more space to do physical therapy exercises at home and so that Liboy could be closer to his doctors and other medical providers.

On May 10, 2017, NYCHA authorized a "reasonable accommodation" transfer for Liboy, which is available to public housing residents. (Compl. ¶¶ 5, 33, 36.) Liboy was placed on a waitlist for a one-bedroom apartment[2] at Rutgers Houses, a public housing development in the Lower East Side of Manhattan.

In December 2018, however, Baychester was converted into project-based housing subsidized with federal funds under Section 8 of the Housing Act ("Section 8"), as well as under the Rental Assistant Demonstration ("RAD")/Permanent Affordability Commitment Together ("PACT") Program (the "RAD/PACT Program" or the "Program"). The RAD/PACT Program is run by the United States Department of Housing and Urban Development ("HUD"). Through the Program, NYCHA is able to convert public housing into privately operated project-based Section 8 housing by inviting private developers, landlords, and management companies to restore and manage buildings in need of repair.

After Baychester was converted into project-based Section 8 housing, NYCHA "unilaterally removed" Liboy from

---

[2] The Complaint alleges that Liboy was placed on a waitlist for a "two-bedroom apartment" at Rutgers Housing, citing a May 10, 2017 letter from NYCHA, attached as Exhibit A to the Complaint. (Compl. ¶ 36.) However, Exhibit A actually indicates that Liboy was placed on a waitlist for a one-bedroom apartment. (See "May 10, 2017 NYCHA Letter," id., Ex. A.)

the waitlist for Rutgers Houses without affording him an opportunity to challenge his removal. (Id. ¶¶ 6, 37; see also "December 11, 2018 NYCHA Letter," id., Ex. B.)

Liboy alleges that "[u]nder the statute implementing the RAD/PACT Program, tenants who have been converted from NYCHA to RAD/PACT tenants '*shall*, at a minimum, *maintain the same rights* under such conversion as those provided under sections 6 and 9 of the [Housing Act].'" (Compl. ¶ 40 (emphasis and alterations in original) (quoting the Consolidated Appropriations Act of 2012, Pub.L. No. 112-55, 125 Stat. 552, 674 (2011)("P.L. 112-55")).) Liboy further alleges that under HUD's RAD Fair Housing, Civil Rights, and Relocation Notice[3] (the "RAD Fair Housing Notice") for pre-RAD conversion owners of housing projects ("PHAs"),[4] post-RAD conversion owners of housing projects ("Project Owners"), and RAD development partners, "PHAs and Project Owners are required to '[i]dentify[] and maintain[] existing and pending reasonable accommodations' during the conversion process." (Id. ¶ 42 (quoting RAD Fair Housing Notice at 1).)

---

[3] See RAD Fair Housing, Civil Rights, and Relocation Notice, available at https://www.hud.gov/sites/documents/16-17HSGN_16-17PIHN.PDF.
[4] A "PHA," or "Public Housing Agency," is "any State, county, municipality, or other governmental entity or public body, or agency or instrumentality of these entities, that is authorized to engage or assist in the development or operation of low-income housing under the 1937 Act." 24 C.F.R. § 5.100.

Additionally, during the conversion of Baychester from public housing to project-based Section 8 housing under the RAD/PACT Program, NYCHA informed Baychester tenants that "NYCHA will 'remain actively involved in your development by administering the Section 8 program, inspecting apartments, and managing the wait list.'" (Id. ¶ 44 (emphasis in original) (quoting "Resident Letter," id., Ex. C).)

Liboy alleges that NYCHA, relying on 24 C.F.R. § 983.261, has maintained the position that once a public housing tenant becomes a tenant of the RAD/PACT Program, NYCHA may not relocate that tenant to another RAD/PACT complex or another public housing development. According to Liboy, NYCHA's consistent position has been that, pursuant to the regulation, if a family "elected" to move out of their project-based housing, "the PHA must offer the family the opportunity for continued tenant-based rental assistance, in the form of either assistance under the voucher program or other comparable tenant-based rental assistance." (Id. ¶ 46 (emphasis in original) (quoting 24 C.F.R. §§ 983.261(a) and (b)).) Liboy counters that this regulation does not apply to individuals like himself who are seeking a necessary transfer or accommodations based on disability, and not by choice.

After Liboy was removed from the NYCHA transfer waitlist, he requested on multiple occasions (to no avail)

6

that he be relocated, making the request both to C&C Apartments (his new management company) and to NYCHA. On March 3, 2022, Liboy filed another reasonable accommodation transfer request with the Brooklyn NYCHA Customer Contact Center.

Although Liboy was notified on or around May 10, 2022, that he was approved to be transferred to another two-bedroom apartment within Baychester, NYCHA through its counsel informed Liboy on May 24 and May 27, 2022, that it would not transfer Liboy to another RAD/PACT development, but that instead he was approved for a two-bedroom voucher. NYCHA offered Liboy two options: (1) he could be transferred to a two-bedroom apartment within Baychester, depending on availability, or (2) if he wished to leave the development, he could receive a tenant-based voucher for a two-bedroom apartment in the amount of $2,527 per month, which he could use in the private rental market.

Liboy contends that the options offered by NYCHA are inadequate accommodations in light of his disabilities. He alleges that remaining at Baychester is not an option, because his health issues and limited mobility make his commute to lower Manhattan burdensome. Likewise, Liboy alleges that the tenant-based voucher is not a feasible option because the voucher cannot realistically cover the rent of a suitable

two-bedroom apartment near lower Manhattan or nearby Brooklyn. Liboy further contends that neither he nor his brother Michael would be able to expend the effort to physically search for and visit apartments in the competitive Manhattan rental market, given their physical limitations and medical conditions.

In September 2022, Liboy communicated to NYCHA his concerns regarding the inadequacy of NYCHA's proposed accommodations. In response, NYCHA offered to: (1) pay a broker's fee, if necessary; (2) increase the tenant-based Section 8 voucher to $2,808 per month; and, (3) refer Liboy to the Mayor's Office of Public Engagement to assist him with locating available apartments. Liboy argues that NYCHA's offers are not reasonable accommodations, in part, because the voucher does not cover the additional expenses inherent in the moving process, such as moving expenses and the security deposit. Though NYCHA reached out to C&C Management to see whether the property manager had two-bedroom apartments in Liboy's preferred locations, C&C Management confirmed that there were no such apartments available.

Liboy continues to reside at Baychester with Michael and continues to make his roundtrip commute to his medical providers in lower Manhattan. He alleges that NYCHA's refusal to offer him reasonable accommodations has "cause[d] him

ongoing stress, anxiety, humiliation, and physical harm during his five-hour roundtrip commutes to his medical providers." (Id. 69.)

Liboy filed the instant action alleging that NYCHA, along with Russ and Bova-Hiatt in their official capacities, violated various state and federal statutes and the U.S. Constitution by taking him off the transfer waitlist and refusing to provide reasonable housing accommodations based on his disabilities.

B.   PROCEDURAL HISTORY

Plaintiff initiated this action on December 6, 2022. Consistent with the Court's Individual Practices, Defendants sent Plaintiff a pre-motion letter identifying deficiencies in the Complaint that would form the basis of a motion to dismiss. (See Dkt. No. 15.) Plaintiff sent Defendants a pre-motion letter opposing the grounds for Defendants' anticipated motion (see Dkt. No. 21), and Defendants filed a pre-motion letter to the Court, requesting a pre-motion conference and indicating that the parties failed to resolve their issues without resorting to motion practice (see Dkt. No. 22).

The Court denied Defendants' request for a pre-motion conference and directed the parties to indicate whether they consented to the Court deeming the pre-motion letters a fully

briefed motion or requested full or supplemental briefing. The parties indicated that they sought full briefing on the anticipated motion to dismiss and provided a briefing schedule, which the Court subsequently adopted. In accordance with the parties' briefing schedule, Defendants filed their Motion and accompanying Brief (see Motion; Br.), Plaintiff filed an opposition to the Motion (see "Opposition" or "Opp.," Dkt. No. 30), and Defendants filed a reply (see "Reply," Dkt. No. 32).

On August 30, 2023, Defendants filed a supplemental letter, purporting to update the Court on recent events referenced in the Complaint and in Defendants' Motion to Dismiss. (See "Defs. Supp. Ltr.," Dkt. No. 33.) On September 1, 2023, Plaintiff filed a response to Defendants' letter, arguing that incorporating the update into the Motion to Dismiss is improper. (See "Pl. Supp. Ltr.," Dkt. No. 34.)

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Id. In other words, a complaint should not be dismissed when the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The requirement that a court accept the factual allegations in the complaint as true does not, however, extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. **DISCUSSION**

Defendants move to dismiss Liboy's Complaint on several grounds, including that his claims are time-barred and that he failed to state a claim under each cause of action.

A.   <u>STATUTE OF LIMITATIONS</u>

As a threshold issue, the Court must address whether Liboy's claims are time-barred, thereby warranting dismissal of the action. Defendants argue that none of Liboy's claims have been timely brought under their respective statute of limitations.

First, Defendants contend that Liboy's Fourth Cause of Action, asserting violation of the Due Process Clause, and Fifth Cause of Action, asserting violation of the Housing Act, both of which are brought under 42 U.S.C. § 1983 ("Section 1983"), are subject to a three-year statute of limitations, which Liboy does not dispute. (<u>See</u> Br. at 7; Opp. at 15.) For claims brought under Section 1983, the applicable statute of limitations period is "found in the 'general or residual [state] statute [of limitations] for personal injury actions.'" <u>Pearl v. City of Long Beach</u>, 296 F.3d 76, 79 (2d Cir. 2002) (quoting <u>Owens v. Okure</u>, 488 U.S. 235, 249-50 (1989)). In New York, the applicable limitations period is three years. <u>See</u> <u>id.</u> (citing N.Y. C.P.L.R. § 214(5) (McKinney 1990)). Accrual of a Section 1983 cause of action, which is determined by federal law, occurs "when the plaintiff knows or has reason to know of the injury which is the basis

of his action." <u>Singleton v. City of New York</u>, 632 F.2d 185, 191 (2d Cir. 1980) (citation omitted).

For both his Due Process Clause and Housing Act claims, Liboy alleges that Defendants violated his rights by removing him from the waitlist for transfer to the Rutgers Houses without providing him an opportunity to be heard at a pre-termination hearing. The parties, however, dispute when the cause of action accrued. Defendants argue that Liboy's hearing deprivation claims accrued shortly after December 11, 2018, the date on which NYCHA mailed him the notice informing him that he had been removed from the transfer waitlist due to the conversion of Baychester from public housing to project-based Section 8 housing through the RAD/PACT Program. Since the instant Complaint was filed on December 7, 2022, Defendants insist that the statute of limitations period for these claims renders them untimely.

Liboy counters that his claims are timely because he was not actually on notice that he could contest his removal through a pre-termination hearing when he received the December 11, 2018 NYCHA Letter, nor was he informed that he could contest his removal when he repeatedly made accommodation requests after the Baychester conversion.

The Court is not persuaded that Liboy's claims under Section 1983 are timely. While Liboy challenges the accrual

13

date of December 11, 2018, he fails to provide any later date on which he would purportedly be on notice of the deprivation of his right to a pre-termination hearing. The Second Circuit has remarked that "accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief," or, in other words, "when the wrongful act or omission results in damages." Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007)).

Here, even though Liboy argues that he was not fully aware that he could obtain a pre-termination hearing, the Court finds that his causes of action under Section 1983 accrued roughly on or about December 2018, when Liboy received the letter notice from NYCHA informing him that he would be removed from the waitlist for transfer to Rutgers Houses. Though Liboy argues that the cause of action did not accrue on that date because he was not informed of his right to contest the removal, he fails to provide a date by which he would have become apprised of his ability to challenge the removal via a pre-termination hearing or otherwise. Therefore, the Court finds that Liboy's injury occurred the moment he learned he was removed from the waitlist. That he alleges he became aware only later that he could challenge his removal from the waitlist does not toll the statute of

limitations for his Section 1983 claims. See, e.g., Smith v. City of New York, 130 F. Supp. 3d 819, 833 (S.D.N.Y. 2015), aff'd, 664 F. App'x 45 (2d Cir. 2016) ("[T]here can be no serious doubt that [plaintiff] knew of his termination from employment when it happened. That [plaintiff] later found out about a collateral consequence of that termination does not toll the running of the limitations period."); Campbell, 782 F.3d at 100 (noting that a claim "accrues even though the full extent of the injury is not then known or predictable" (quoting Kato, 549 U.S. at 388)).

Moreover, the Court notes that the May 10, 2017 NYCHA Letter -- which informed Liboy that his transfer request to Rutgers Houses was approved and that he was placed on a waitlist -- expressly provides that the recipient may "request a grievance to appeal NYCHA's determination." (May 10, 2017 NYCHA Letter.) While Liboy contends that he was not aware of his right to challenge NYCHA's determination regarding his removal from the waitlist until after he made repeated reasonable accommodation requests to NYCHA, the Court finds that he was reasonably on notice of that right since May 2017, when he was first approved for transfer and placed on the waitlist. Thus, the Court is persuaded that Liboy's Due Process Clause and Housing Act claims, both brought under Section 1983, accrued shortly after December

11, 2018, and as the instant action was initiated on December 7, 2022, the claims are time-barred. Accordingly, Defendants' Motion to dismiss Liboy's Fourth and Fifth Causes of Action is **GRANTED**.

Next, the Court considers whether Liboy's remaining claims are timely. Liboy's First, Second, Third, Sixth, and Seventh Causes of Action allege violations of the ADA, the RA, the FHA, the NYSHRL, and the NYCHRL (collectively, the "Reasonable Accommodation Claims"), respectively. Defendants contend that these causes of action "are time-barred at least in part," with respect to Liboy's challenge to his removal from the waitlist to transfer to the Rutgers Houses in 2018.[5] (Br. at 8.)

The parties do not dispute that claims brought under the ADA and the RA in New York are subject to a three-year statute of limitations period. See Bolden v. Westchester Cnty. N.Y. Bd. of Ethics, No. 22-CV-10555, 2023 WL 3976931, at *12 (S.D.N.Y. June 12, 2023). The statute of limitations for claims brought under the NYSHRL and the NYCHRL is also three years. See Bermudez v. City of New York, 783 F. Supp. 2d 560,

---

[5] Liboy alleges this removal violated his rights to reasonable accommodations, "[d]espite the [] statutory and regulatory framework commanding that RAD-converted tenants maintain the same rights they had as public housing tenants, including the right to a reasonable accommodation transfer to another public housing development as appropriate." (Compl. ¶ 45; see id. ¶¶ 38-44 (citing P.L. 112-55, RAD Fair Housing Notice, and Resident Letter).)

573 (S.D.N.Y. 2011). And claims under the FHA are subject to a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A); see Logan v. Matveevskii, 57 F. Supp. 3d 234, 267 (S.D.N.Y. 2014).

As with the Due Process Clause and Housing Act claims, the Court is not persuaded that Liboy's Reasonable Accommodation Claims are timely, to the extent they are based on his removal from the public housing transfer waitlist in 2018.[6] "[A] cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.'" Stone v. 23rd Chelsea Assocs., No. 18-CV-3869, 2020 WL 1503671, at *86 (S.D.N.Y. Mar. 30, 2020) (quoting Nat'l R.R. Passenger Corp. v. McDonald, 779 F.3d 97, 101 (2d Cir. 2018)); see Bermudez, 783 F. Supp. 2d at 574 (noting courts employ the same standard for applying the continuing violation doctrine under NYCHRL and NYSHRL as under federal law). Here, Liboy's causes of action under his Reasonable Accommodation Claims accrued on or about December 2018, when he was informed by NYCHA's letter notice that he would be removed from the waitlist. (See Compl. ¶ 37; December 11, 2018 NYCHA Letter.) Liboy waited almost four years after

---

[6] Defendants do not contest the timeliness of Liboy's Reasonable Accommodation Claims that are based on his 2022 reasonable accommodation requests. The Court turns later to Defendants' arguments that Liboy failed to state a claim with respect to the remaining Reasonable Accommodation Claims that are based on those 2022 requests.

his removal from the waitlist to file the instant Complaint. The Court therefore concludes that Liboy's Reasonable Accommodation Claims challenging his removal from the waitlist must be dismissed as time-barred.

Liboy argues that his Reasonable Accommodation Claims are not time-barred because his removal from the waitlist was not a discrete act but part of a "continuous practice and policy of discrimination." (Opp. at 10.) Defendants respond that the continuing violation doctrine is not applicable to these facts. For the reasons stated below, the Court finds that the continuing violation doctrine does not apply here.

"Where the continuing-violation doctrine applies, it 'delays the commencement of the statute of limitations period . . . until the last discriminatory act in furtherance of' the alleged discriminatory policy." Higgins v. 120 Riverside Boulevard at Trump Place Condo., No. 21-CV-4203, 2022 WL 3920044, at *13 (S.D.N.Y. Aug. 31, 2022) (quoting Grimes v. Fremont Gen. Corp., 785 F. Supp. 2d 269, 292 (S.D.N.Y. 2011)). "Under the continuing violation doctrine, when an unlawful practice 'continues into the limitations period, the complaint is timely' if the last alleged practice is within the two-year statutory period." Dames v. de Blasio, No. 20-

CV-0226, 2020 WL 3869724, at *4 n.5 (S.D.N.Y. July 8, 2020) (quoting Havens v. Coleman, 455 U.S. 363, 380 (1982)).

The continuing violation doctrine ordinarily applies in the employment context, usually to hostile work environment claims which require a showing of "repeated or ongoing" conduct that is "adequately severe or pervasive to constitute a violation." Velez v. N.Y.C. Police Pension Fund Article II, No. 18-CV-1366, 2019 WL 1382884, at *7 (S.D.N.Y. Mar. 27, 2019) (quoting Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015)); see, e.g., Cornwell v. Robinson, 23 F.3d 694, 703-04 (2d Cir. 1994); Kimmel v. State, 853 N.Y.S.2d 779, 780 (App. Div. 4th Dep't 2008). Nevertheless, as Liboy points out (see Opp. at 10), courts have in limited circumstances applied the doctrine in the housing discrimination context. See Melton v. Malcolm Shabazz, L.P., No. 18-CV-8111, 2021 WL 535661, at *4 (S.D.N.Y. Feb. 12, 2021); see, e.g., Stone, 2020 WL 1503671, at *7 (collecting cases applying the continuing violation doctrine to NYCHRL and NYSHRL). However, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." Marinelli v. Chao, 222 F. Supp. 2d 402, 413 (S.D.N.Y. 2002) (quoting Little v. Nat'l Broad. Co., Inc., 210 F. Supp. 2d 330, 366 (S.D.N.Y. 2002)); see Stone, 2020 WL 1503671, at *6 ("[S]uch tolling [] 'is

disfavored in this Circuit, and will be applied only upon a
showing of compelling circumstances.'" (quoting <u>Favourite v.</u>
<u>55 Halley St., Inc.</u>, 381 F. Supp. 2d 266, 279 (S.D.N.Y.
2019)).

 The Court finds no such compelling circumstance that
warrants application of the continuing violation doctrine
here. The Court is guided by two considerations that each
counsels against applying the continuing violation doctrine
in this case. First, as with the Due Process and Housing Act
claims, the Court concludes Liboy was on notice of his injury
the moment he learned he was removed from the public housing
transfer waitlist. Second, the Court finds that Liboy's
removal in December 2018 was a discrete act, separate from
his 2022 reasonable accommodation requests. The Court
discusses each consideration, in turn.

 First, that Liboy was aware that he was removed from the
waitlist because his housing development had been converted
to a RAD/PACT complex cuts against applying the continuing
violation doctrine. "In the housing context, courts have
applied the continuing violation theory 'where the type of
violation is one that could not reasonably have been expected
to be made the subject of a lawsuit when it first occurred
because its character as a violation did not become clear
until it was repeated during the limitations period.'"

Melton, 2021 WL 535661, at *4 (quoting 273 Lee Ave. Tenants
Ass'n by Sanchez v. Steinmetz, 330 F. Supp. 3d 778, 791-92
(E.D.N.Y. 2018)). "Conversely, courts have held the
continuing violation theory does not apply *where a plaintiff
was on notice of what []he believed was discrimination but
failed to act in preservation of h[is] rights in spite of
h[is] knowledge*." Id. (emphasis added) (quoting Steinmetz,
330 F. Supp. 3d at 792). Here, NYCHA sent Liboy a letter in
December 2018 informing him that he had been removed from the
public housing waitlist and explaining to him that he had
been removed because his housing development had been
converted to a RAD/PACT development. (See Compl. ¶ 37;
December 11, 2018 NYCHA Letter.) Accordingly, the Court finds
that, despite learning that Defendants had removed him from
the waitlist because of the conversion of his housing
development, Liboy did not challenge his removal from the
waitlist within the applicable statute of limitations time
period.

Liboy argues that he was not on notice of Defendants'
discrimination because it was "only after his transfer was
repeatedly denied subsequent to [his housing development's]
conversion that it became clear that he lost the entitlement
he once had to be transferred." (Opp. at 13.) However, the
Court finds that Defendants reasonably informed Liboy that

the conversion of his housing development to a RAD/PACT complex was the reason Defendants could no longer honor his transfer request. In the December 11, 2018 NYCHA Letter informing Liboy about his removal from the waitlist, NYCHA explained that, "due to the imminent RAD conversion at Baychester," his "transfer request to another NYCHA development can no longer be processed" and that "NYCHA will issue a tenant-based voucher to you that you can use to lease a new unit in or outside of New York City." (See December 11, 2018 NYCHA Letter.) Thus, accepting Liboy's factual allegations as true and drawing all reasonable inferences in his favor, Chambers, 282 F.3d at 152, the Court finds that Defendants reasonably informed Liboy in December 2018 that he had been removed from the waitlist, that the reason for his removal was that his housing development had been converted to a RAD/PACT complex, and that, as an alternative to transferring him, it would issue him a voucher that he could use to lease a new apartment unit. See Favourite, 381 F. Supp. 3d at 279 (declining to apply the continuing violation theory because plaintiff failed to show "that the Defendants concealed the cause of action's existence"). Liboy was therefore on notice of Defendants' allegedly discriminatory

conduct as of December 2018. See Smith, 130 F. Supp. 3d at 833.

Liboy argues that his claims are not time-barred because "Defendants' discriminatory conduct 'did not become clear until it was repeated during the limitations period.'" (See Opp. at 13 (quoting Melton, 2021 WL 535661, at *4).) In Melton, the Court stated that the continuing violation doctrine can apply in the housing discrimination context if the "violation did not become clear until it was repeated during the limitations period." 2021 WL 535661, at *4. But Liboy's reliance on Melton is unavailing. There, the plaintiff alleged that Defendants discriminated against her by delaying repairs to her apartment, and plaintiff alleged that "she was not aware of the alleged discrimination until" several months later, when she saw evidence that other tenants' apartments were receiving repairs that she was being denied. Id. By contrast here, Liboy was on notice of Defendants' allegedly discriminatory act at the time that act was taken in December 2018. Defendants notified Liboy on that occasion that he had been removed from the public housing waitlist and that the reason for his removal was that his housing development had been converted to a RAD/PACT complex. (See Compl. ¶ 37; December 11, 2018 NYCHA Letter.) Thus, unlike the plaintiff in Melton, Liboy knew (or should have

known) of Defendants' allegedly discriminatory policy of treating RAD/PACT tenants differently than public housing tenants as it relates to reasonable accommodation transfer requests. Accordingly, the Court concludes Liboy was on notice in December 2018 of what he believed was Defendants' discriminatory action, but nevertheless failed to bring the present action within the relevant statute of limitations period.

Second, the Court finds that Liboy's removal from the public housing waitlist in December 2018 was a discrete act, separate from his reasonable accommodation requests in 2022. Courts in this district have held that "the continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Velez, 2019 WL 1382884, at *7 (internal quotation marks omitted) (quoting Rivas v. N.Y. State Lottery, 745 F.App'x 192, 193 (2d Cir. 2018) (summary order)). Unlike the hostile work environment context -- where a violation inherently entails a "series of separate acts" that "collectively constitute an unlawful employment practice" -- "rejection of a proposed accommodation is a single completed action when taken," regardless of the continued "*effect*" felt by the plaintiff requesting the

accommodation. <u>Higgins</u>, 2022 WL 3920044, at *14 (emphasis in original)(quoting <u>Elmenayer v. ABF Freight Sys., Inc.</u>, 318 F.3d 130, 134-35 (2d Cir. 2003)). "This is so even if the request for an accommodation is repeated; the violation of the statute -- the refusal to honor a request for accommodation -- must occur within the limitations period for it to form the basis of a timely claim." <u>Id.</u>

Here, the Court is persuaded that Liboy's removal from the public housing waitlist was a discrete act that was completed in December 2018. <u>See</u> <u>id.</u> ("[R]ejection of a proposed accommodation is a single completed action when taken."). That Liboy subsequently made repeated requests for an accommodation does not transform the discrete action of removing him from the waitlist into a pattern or practice of discrimination. <u>See</u> <u>id.</u> at *16 ("Just because the alleged violations were serial does not mean they were continuing." (quoting <u>Elmenayer</u>, 318 F.3d at 135)). This is so even if, as Liboy contends, Defendants' subsequent refusals to honor Liboy's requests for an accommodation were made "pursuant to a general policy that results in other discrete acts occurring within the limitations periods." <u>See</u> <u>Velez</u>, 2019 WL 1382884, at *7 (quoting <u>Rivas</u>, 745 F.App'x at 193). Otherwise, Liboy could effectively toll the statute of limitations for his Reasonable Accommodation Claims by making new or repeated

requests for accommodation after the statute of limitations
lapsed on the original discriminatory act. Cf. Majer v. Metro.
Trans. Auth., No. 90-CV-4608, 1990 WL 212928, at *9 (S.D.N.Y.
Dec. 14, 1990) ("[P]etitioner's direction of correspondence
to respondents, which can be viewed, at most, as a request
for reconsideration, does not toll or revive the Statute of
Limitations." (citation omitted)).

In this respect, reasonable accommodation claims in the
housing discrimination context are distinguishable from the
cases Liboy cites that involved hostile work environment
claims. (See Opp. at 10 (citing Cornwell, 23 F.3d at 703, and
Kimmel, 853 N.Y.S.2d at 780).) The continuing violation
doctrine is more apt in the hostile work environment context
because there a violation is, fundamentally, a "series of
separate acts" that "collectively constitute" an unlawful
practice. See Elmenayer, 318 F.3d at 134-35.

This case is also distinguishable from the other cases
cited by Liboy. For example, in applying the continuing
violation doctrine to FHA claims, the court in Eastern
Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Associates
emphasized that the defendants' discrimination was continuing
through the statute of limitations period because at no time
was the housing development accessible to wheelchair users.
133 F. Supp. 2d 203, 212-13 (E.D.N.Y. 2001). This drove the

26

court's conclusion that the defendants' discriminatory conduct was not a discrete violation but an unlawful practice continuing "through the present day." Id. at 213.

Similarly, in Tejada v. LittleCity Realty LLC, the court applied the continuing violation doctrine to FHA and NYCHRL claims, where the plaintiffs had sufficiently alleged that "defendants continuously engaged in a pattern of discriminatory behavior in an effort to displace the rent[]stabilized Latino tenants." 308 F. Supp. 3d 724, 733. While the plaintiffs' allegations there included a series of separate acts from the defendants -- such as requiring only Latino tenants "to provide proof of their legal immigration status when they renew[ed] their leases," targeting Latino tenants with "frivolous eviction proceedings," "impos[ing] unlawful rent increases," and engaging in a pattern of "discriminatory threatening and harassing behavior towards [Latino tenants]" -- the court concluded that these separate acts were collectively part of a single discriminatory campaign of harassment directed at Latino tenants in an unlawful attempt to displace them. Id. at 726, 733. In the present case, the Court is not persuaded that Liboy's allegations -- first, regarding his removal from the transfer waitlist in December 2018 and next, regarding his reasonable accommodation requests more than three years

later -- are comparable to the ongoing and continuous nature of the discriminatory behavior alleged in both Eastern Paralyzed and Tejada.

The Court finds Higgins more instructive here. In that case, the court refused to apply the continuing violation doctrine to claims brought under the FHA alleging that the defendants ignored tenant's repeated requests for reasonable accommodations. The plaintiff alleged that the defendants' actions were "part of a 'policy and practice' to ignore her requests for reasonable accommodations." 2022 WL 3920044, at *16. Nevertheless, the court rejected this characterization, concluding that "[j]ust because the alleged violations were serial does not mean they were continuing." Id. Rather, "each time [the defendants] denied [the plaintiff's] request for a reasonable accommodation, they were committing a discrete act." Id.

The Court is not persuaded by Liboy's efforts to distinguish Higgins. Liboy argues that the plaintiff there had alleged only a specific harm to herself and did not allege that the defendants' conduct was part of a broader policy affecting individuals similar to the plaintiff, as Liboy does here. (See Opp. at 13 n.3.) But the plaintiff in Higgins alleged that defendants' repeated denials of her reasonable accommodation requests were not "discrete incidents but

rather were evidence of a policy and practice adopted by [defendants] . . . because these were all denials relating to the same types of requests." 2022 WL 3920044, at *15 (internal quotation marks and citation omitted). So too here. Accepting as true Liboy's allegation that "he requested to be transferred multiple times" after his removal from the public housing waitlist in 2018, see Compl. ¶ 49, the Court concludes that these "repeated denials of requests for a reasonable accommodation do not constitute a continuing violation." See O'Leary v. Town of Huntington, No. 11-CV-3754, 2012 WL 3842567, at *8 (E.D.N.Y. Sept. 5, 2012) (citing Whalen v. CSC TKR, LLC, No. 11-CV-1834, 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011) ("[T]he Court is not persuaded that [defendant's] denial of [plaintiff's] repeated requests for the same accommodation constitutes a continuing violation of the ADA.")); see also Fol v. City of New York, No. 01-CV-1115, 2003 WL 21556938, at *5 (S.D.N.Y. July 9, 2003) (holding ADA claim based on a defendant's denial of repeated requests for accommodation was not subject to the continuing violation doctrine).[7]

The Court therefore finds no compelling circumstance that would warrant applying the continuing violation doctrine

_____

[7] Liboy's reliance on Marinelli, 222 F. Supp. 2d 402, is similarly unavailing. (See Opp. at 11-12.) The Second Circuit and courts in this District have since cast doubt on the three-factor framework adopted from

here. Accordingly, Defendants' Motion to Dismiss Liboy's
Reasonable Accommodation Claims, to the extent they are based
on his removal from the public housing waitlist in December
2018, is **GRANTED**.

B.   MERITS OF LIBOY'S REASONABLE ACCOMMODATION CLAIMS

Finally, the Court considers Liboy's remaining timely
Reasonable Accommodation Claims. While the Court finds that
Liboy's Reasonable Accommodation Claims are time-barred with
respect to his December 2018 removal from the public housing
waitlist, Liboy further alleges that NYCHA failed to
adequately accommodate his disability in response to his 2022
reasonable accommodation requests. (See Compl. ¶¶ 49-53; see
also "March 3, 2022 Reasonable Accommodation Transfer
Request," id., Ex. D; "May 2022 Email correspondence between
Manhattan Legal Services and NYCHA," id., Ex. E.) These later
requests for accommodations fall well within the relevant
statute of limitations. See Bolden, 2023 WL 3976931, at *12
(three-year statute of limitations for ADA and RA claims);
Bermudez, 783 F. Supp. 2d at 573-74 (three-year statute of

---

Berry v. Bd. of Supervisors of La. State Univ., 715 F.2d 971, 981 (5th
Cir. 1983), cert. denied, 479 U.S. 868 (1986), which Liboy invokes here.
See Caravantes v. 53rd St. Partners, LLC, No. 09-CV-7821, 2012 WL 96474,
at *9 (S.D.N.Y. Jan. 12, 2012) (noting the Berry test "was never adopted
by the Second Circuit, and was called into question by the Supreme Court"
in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-10 (2002));
see also Kendall v. Fisse, 149 F. App'x 19, 21 (2d Cir. 2005) (observing
that the Supreme Court in Morgan rejected the rationale used in Berry).

limitations for NYSHRL and NYCHRL claims); Logan, 57 F. Supp. 3d at 267) (two-year statute of limitations for FHA claims (citing 42 U.S.C. § 3613(a)(1)(A))). The Court therefore considers whether Liboy fails to state a claim under the ADA, the RA, the FHA, the NYSHRL, and the NYCHRL.

Though Liboy alleges a violation under each statute, the Court shall apply a single analysis to these claims, as the courts of this Circuit "apply a similar analysis to reasonable accommodation claims under the ADA, RA, FHA, NYSHRL, and NYCHRL," given their similarities. See Pinckney v. Carroll, No. 18-CV-12198, 2019 WL 6619484, at *6 (S.D.N.Y. Dec. 4, 2019). Disability discrimination "may be proven pursuant to one of three theories: (1) intentional discrimination; (2) disparate impact; and (3) failure to make a reasonable accommodation." Id., at *6. Here, Liboy "invokes the third theory, which makes it unlawful for defendants to refuse 'to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling.'" Id. (alteration in original) (quoting Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco, No. 17-CV-8586, 2019 WL 1368560, at *13 (S.D.N.Y. Mar. 26, 2019)). "A reasonable accommodation 'gives the otherwise qualified plaintiff with disabilities meaningful access to the program

or services sought.'" Id. (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 282 (2d Cir. 2003)). "[F]ailure-to-accommodate claims involve allegations that 'a disability makes it difficult for a plaintiff to access benefits' 'to which she is legally entitled.'" Brooklyn Ctr. for Psychotherapy, Inc. v. Phila. Indem. Ins. Co., 955 F.3d 305, 311-12 (2d Cir. 2020) (internal alterations omitted) (quoting Henrietta D., 331 F.3d at 277, 273).

"To state a prima facie case for discrimination based on a failure to reasonably accommodate, a plaintiff must demonstrate that: (1) he suffers from a disability or handicap as defined by the statutes; (2) the defendant knew or reasonably should have known of the plaintiff's disability or handicap; (3) accommodation of the disability or handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation." Temple v. Hudson View Owners Corp., 222 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (internal alterations omitted) (quoting Sinisgallo v. Town of Islip Hous. Auth., 865 F. Supp. 2d 307, 336 (E.D.N.Y. 2012)). Defendants do not dispute that Liboy suffers from a disability as defined by federal and state law, nor do Defendants dispute that NYCHA was aware of Liboy's disability.

Principally, Defendants raise three arguments for why Liboy fails to state a cause of action on his Reasonable Accommodation Claims. First, Defendants argue that Liboy has failed to state a claim because his requested accommodation -- that "NYCHA place him in a public housing apartment in lower Manhattan or nearby Brooklyn" -- "constitutes a fundamental alteration of the Section 8 program." (Br. at 17.) Second, Defendants contend that Liboy's requested accommodations are "based on preferences unrelated to the benefits of the program." (Br. at 20.) Finally, Defendants insist that NYCHA's offers to Liboy in response to his requested accommodations are sufficient to satisfy its reasonable accommodation obligations as a matter of law. (Br. at 22.) Liboy, in turn, disputes each of Defendants' arguments that he has failed to state a claim and argues instead that each of Defendants' arguments are fact-based and therefore inappropriate for a motion to dismiss. (See Opp. at 17.). The Court addresses Defendants' arguments below.

Defendants first argue that Liboy's accommodation request -- "that NYCHA place him in a public housing apartment in lower Manhattan or nearby Brooklyn" -- would "constitute[] a fundamental alteration of the Section 8 program" because

Section 8 does not provide (let alone guarantee) housing to Section 8 participants. (Br. at 17-18.)

As an initial matter, Liboy relies on a case from this Court to argue that the fundamental alteration defense is an "affirmative defense [that] is not a basis for dismissal." (Opp. at 18 (citing Schine by Short v. N.Y. State Office for People with Dev. Disabilities, No. 15-CV-5870, 2017 WL 9485650, at *21 (E.D.N.Y. Jan. 5, 2017), report and recommendation adopted, 2017 WL 1232530 (E.D.N.Y. Mar. 31, 2017)).) But the holding in Schine turned on the specific pleadings in that case, which differed in significant ways from the pleadings here. There, the Magistrate Judge found that the defendants' fundamental alteration defense rested, in part, on disputed facts about the cost and effectiveness of the plaintiff's requested accommodations, as well as the defendants' concerns that they "would likely not be eligible for federal reimbursement" if they granted the plaintiff's accommodations. Id., at *2. The Magistrate Judge reasoned that "the intensive cost-benefit analysis that would be necessary to assess a fundamental alteration defense is not appropriately made at the pleading stage." Id., at *6 (concluding that defendants' "reimbursement concerns" were

"premature" for motion for judgment on the pleadings and would be more "germane in a motion for summary judgment").

Thus, rather than standing for a blanket proposition that the fundamental alteration defense is unsuitable for resolution at the motion to dismiss stage, Schine's conclusion turned on the supposed "impracticality of Plaintiff's requested relief." Id. By contrast, here, Defendants' fundamental alteration defense turns on the statutory and regulatory framework of the Section 8 Program, which is a matter of law on which the Court is well-positioned to rule on a motion to dismiss. See Louis v. N.Y.C. Hous. Auth., 152 F. Supp. 3d 143, 152-53 (S.D.N.Y. 2016) (dismissing ADA reasonable accommodation claims as constituting a fundamental alteration of NYCHA's Section 8 Program).

Turning to the Section 8 Program, the Court is persuaded that Liboy's reasonable accommodation request goes beyond the benefits provided by the Section 8 Program. The Court therefore concludes that requiring Defendants to provide Liboy housing in lower Manhattan or nearby Brooklyn would substantively alter the benefits provided by the Section 8 Program.

Section 8 "is a federal program providing rent subsidies to low-income tenants in private housing." Id. at 147. The Section 8 Program is administered in accordance with the

35

United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 et seq., and HUD's implementing regulations. Id. In service of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing," Section 8 provides that "assistance payments may be made with respect to existing housing in accordance with the provisions of this section." 42 U.S.C. § 1437f(a). To effectuate this program, HUD "may provide assistance to public housing agencies for tenant-based assistance using a payment standard established in accordance with [the statute]." Id. § 1437f(o)(1)(A). These PHAs, in turn, provide "qualified low-income families vouchers to subsidize the rental of privately-owned units in the housing market," in accordance with the statute. Liberty Res., Inc. v. Phila. Hous. Auth., 528 F. Supp. 2d 553, 556 (E.D. Pa. 2007).

NYCHA is the PHA "that administers the Section 8 tenant-based program in New York City." Louis, 152 F. Supp. 3d at 147. NYCHA administers Section 8's voucher program through two forms of assistance: (1) tenant-based voucher programs, see 24 C.F.R. § 982.1(b); and, (2) project-based voucher programs, see id. § 983.5. Liboy is a project-based Section 8 voucher holder. Under a project-based voucher program,

> [a] [PHA] may use amounts provided under an annual contributions contract under this subsection to enter into a housing assistance payment contract with respect

to an existing, newly constructed, or rehabilitated
structure, that is attached to the structure, subject to
the limitations and requirements of this paragraph.

42 U.S.C. § 1437f(o)(13)(A); see Taylor v. Hous. Auth. of New
Haven, 267 F.R.D. 36, 56 (D. Conn. 2010) (describing the
project-based assistance scheme in greater detail), aff'd sub
nom. Taylor ex rel. Wazyluk v. Hous. Auth. of City of New
Haven, 645 F.3d 152 (2d Cir. 2011). Under a tenant-based
voucher program, "the PHA enters into 'housing assistance
payment contracts' with private landlords, and the Section 8
participant enters into a lease with the owner under that
contract." Id. at 54 (internal alteration and footnote
omitted). The Section 8 Program also establishes "a package
of services that provide assistance to voucher holders in
locating affordable housing," including "inspection of
premises for compliance with quality standards, training for
landlords, a service representative who may be contacted for
questions, weekly landlord briefings to educate landlords
interested in participating in [Section 8], a list of known
available units, monthly housing fairs, and various other
services." Taylor, 267 F.R.D. at 53–54 (quoting Liberty Res.,
Inc., 528 F. Supp. 2d at 568).

However, Section 8 "does *not* offer participants a place
to live as a benefit." Id. at 54 (emphasis added) (quoting
Liberty Res., Inc., 528 F. Supp. 2d at 568). Under a Section

37

8 Program, a PHA "is not responsible for locating participant housing. Rather, the onus is on program participants to find their own rental units." Liberty Res., Inc._, 528 F. Supp. 2d at 568 (quoting 24 C.F.R. § 982.302 ("PHA issues a voucher to a family. The family may search for a unit. [ ] If the family finds a unit, and the owner is willing to lease the unit under the program, the family may request PHA approval of tenancy.")); see Louis, 152 F. Supp. 2d at 153 ("[T]he benefits of the Section 8 program administered by NYCHA do not include the provision of housing.").

Liboy attempts to distinguish Louis on the grounds that this case concerned the tenant-based voucher program rather than the project-based voucher program. (See Opp. at 18-19.) But, at least in this context, the Court finds this argument to raise a distinction without a difference. Project-based assistance "provides low income people with subsidized housing owned by either PHA or private developers who manage the properties under contract with PHA," whereas tenant-based assistance "gives vouchers to low income households to subsidize the rental of units privately-owned by landlords who voluntarily participate in the program." Liberty Res., Inc., 528 F. Supp. 2d at 558. As Defendants point out, "the regulations governing both programs provide [that] the role of the administering agency is to issue subsidy payments to

private landlords, not house the participants." (Reply at 7-8 (citing 24 C.F.R. § 982.1 (tenant-based assistance) and 24 C.F.R. § 983.5 (project-based assistance).) Under a project-based voucher program, "[t]he PHA enters into a . . . contract with an owner for units in existing housing or in newly constructed or rehabilitated housing," 24 C.F.R. § 983.5(a)(2), after which "the PHA makes housing assistance payments to the owner for units leased and occupied by eligible families," id. § 983.5(a)(4).

Furthermore, the implementing regulations for the project-based voucher program specify the mechanism by which beneficiaries of these vouchers can secure transfer to alternative housing. See id. § 983.261 (applying to project-based voucher programs). Under these regulations, a "family may terminate the assisted lease at any time after the first year of occupancy," id. § 983.261(a), and, "[i]f the family has elected to terminate the lease in this manner, the PHA must offer the family the opportunity for continued tenant-based rental assistance, in the form of either assistance under the voucher program or other comparable tenant-based rental assistance," id. § 983.261(b).[8] Thus, as with the

---

[8] Liboy argues that 24 C.F.R. § 983.261 does not apply to individuals like him, who are seeking a necessary transfer or accommodation based on disability, not by choice. Liboy bases this argument on regulation's language, which states that a "PHA must offer the family the opportunity for continued tenant-based rental assistance . . . [i]f the family has

tenant-based voucher program, the regulatory scheme for
project-based vouchers does not offer participants a place to
live as a benefit. See Liberty Res., Inc., 528 F. Supp. 2d at
568.[9] The Court therefore agrees with Defendants that "the
regulations governing both programs provide the role of the
administering agency is to issue subsidy payments to private
landlords, not house the participants." (Reply at 7-8.)[10]

While the Court is mindful of Liboy's predicament, the
law does "not require that substantively different services

---

*elected* to terminate the lease." (Compl. ¶ 46 (emphasis in
original)(quoting § 983.261).) Liboy interprets this language to mean
that the regulation is limited "to families who *choose* to move out of
their project-based Section 8 apartment." (Id. (emphasis in original).)
Building on this reading of the provision, Liboy insists he did not
"choose" to terminate his lease because he "*needs*" to transfer to an
apartment in lower Manhattan or nearby Brooklyn as a result of his
disability, in order to "safely use and enjoy his home." (Opp. at 18 n.6
(emphasis in original); see Compl. ¶ 47.) The Court, however, is not
persuaded by this reading of § 983.261. That the same regulation goes on
to provide for tenant-based assistance for tenants who seek to move
because of "domestic violence, dating violence, sexual assault, or
stalking," see § 983.261(c)(2), indicates that the provision is not
restricted to tenants who have made wholly volitional decisions to seek
alternative housing accommodations.
[9] Indeed, far from providing participants a place to live as a benefit
while tenant-based voucher programs do not, project-based voucher
programs afford participants *less* flexibility in securing alternative
housing than beneficiaries of the tenant-based voucher programs at issue
in Louis, Taylor, and Liberty Resources. See 24 C.F.R. § 983.5(a)(1)
(explaining that, with respect to project-based voucher programs, "the
assistance is 'attached to the structure'"). By contrast, "[u]nlike
project-based voucher holders, [tenant-based] voucher holders have the
flexibility to choose from units for rent throughout the private housing
market." Liberty Res., Inc., 528 F. Supp. 2d at 558; see 24 C.F.R.
§ 982.1(b)(1) ("In project-based programs, rental assistance is paid for
families who live in specific housing developments or units. With tenant-
based assistance, the assisted unit is selected by the family. The family
may rent a unit anywhere in the United States in the jurisdiction of a
PHA that runs a voucher program.").
[10] Liboy also argues that his request for accommodation is not a
fundamental alteration of the Section 8 Program because "the RAD statutory
framework required NYCHA to preserve Mr. Liboy's reasonable accommodation
transfer request pending at the time of the conversion." (Opp. at 17.)

be provided to the disabled, no matter how great their need for services may be. They require only that covered entities make 'reasonable accommodations' to enable 'meaningful access' to such services as may be provided, whether such services are adequate or not." <u>Wright v. Giuliani</u>, 230 F.3d 543, 548 (2d Cir. 2000). After reviewing the relevant statutory and regulatory framework of the Section 8 Program, the Court concludes as a matter of law that requiring Defendants to provide Liboy housing as a reasonable accommodation would endow him with benefits beyond the scope of the Section 8 Program, and beyond those benefits afforded to non-disabled participants under that program. Accordingly, Defendants' Motion to dismiss Liboy's Reasonable Accommodation Claims is **GRANTED**.[11]

### V. <u>ORDER</u>

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 27) of defendants Gregory Russ, Lisa Bova-Hiatt, and the New York City Housing Authority (collectively, "Defendants") to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

---

But, as the Court concluded already, any claims related to Liboy's removal from the public housing transfer waitlist are untimely.

[11] Because the Court concludes Liboy's claims should be dismissed on this ground, the Court declines to reach Defendants' additional arguments that Liboy's reasonable accommodation requests are unrelated to the benefits of the Section 8 program, or that Defendants' proffered accommodations to Liboy's requests are reasonable. (<u>See</u> Br. at 20-24; Reply at 8-10.)

Complaint (Dkt. No. 1) filed by plaintiff Mark Liboy is **GRANTED**.

The Clerk of Court is respectfully directed to close this case and terminate any pending motions, including the pending motion at Dkt. No. 27.

**SO ORDERED.**

Dated:      29 September 2023
            New York, New York

                                    _____
                                           Victor Marrero
                                             U.S.D.J.